**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
**CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)**

1. **SEE NOTICE ON REVERSE**    2. **PLEASE TYPE OR PRINT**    3. **STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>In Re: SBK ART LLC | District Court or Agency:<br><br>USDC Southern Dist. of NY | Judge:<br><br>Hon. Paul A. Engelmayer |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>May 30, 2025 | District Court Docket No.:<br><br>1:24-mc-147 |
| | Date the Notice of Appeal was Filed:<br><br>June 20, 2025 | Is this a Cross Appeal?<br><br>☐ Yes  ✔ No |

| Attorney(s) for Appellant(s):<br><br>☐ Plaintiff<br>✔ Defendant | Counsel's Name:  Address:  Telephone No.:  Fax No.:  E-mail:<br><br>James E. Tysse<br>Akin Gump Strauss Hauer & Feld LLP<br>2001 K Street, NW, Washington, DC 20006<br>Tel: (202) 887-4000; Fax: (202) 887-4288; Email: jtysse@akingump.com |
|---|---|
| Attorney(s) for Appellee(s):<br><br>✔ Plaintiff<br>☐ Defendant | Counsel's Name:  Address:  Telephone No.:  Fax No.:  E-mail:<br><br>Alexander Shapiro<br>Ford O'Brien Landy LLP<br>275 Madison Avenue, 24th Floor, New York, NY 10016<br>Tel: (212) 858-0040; Fax: (212) 256-1047; Email: ashapiro@fordobrien.com |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>46 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously?  ☐ Yes  ✔ No<br><br>If Yes, provide the following:<br><br>Case Name:  N/A<br><br>2d Cir. Docket No.:  N/A        Reporter Citation: (i.e., F.3d or Fed. App.)  N/A |
|---|---|---|---|

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

**PART A: JURISDICTION**

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party       ☐ Diversity<br><br>✔ Federal question  ☐ Other (specify):<br>(U.S. not a party)    _____ | ✔ Final Decision                ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b))<br><br>☐ Interlocutory Decision Appealable As of Right    ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

FORM C (Rev. October 2016)

**PART B: DISTRICT COURT DISPOSITION (Check as many as apply)**

**1. Stage of Proceedings**

☑ Pre-trial
☐ During trial
☐ After trial

Proceeding is miscellaneous discovery proceeding (28 USC 1782); case closed.

**2. Type of Judgment/Order Appealed**

☐ Default judgment
☐ Dismissal/FRCP 12(b)(1) lack of subject matter juris.
☐ Dismissal/FRCP 12(b)(6) failure to state a claim
☐ Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
☐ Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

☐ Dismissal/other jurisdiction
☐ Dismissal/merit
☑ Judgment / Decision of the Court
☐ Summary judgment
☐ Declaratory judgment
☐ Jury verdict
☐ Judgment NOV
☐ Directed verdict
☐ Other (specify):

**3. Relief**

☐ Damages:
☐ Sought: $ _____
☐ Granted: $ _____
☐ Denied: $ _____

☐ Injunctions:
☐ Preliminary
☐ Permanent
☐ Denied

Petition granted in part and denied in part under 28 USC 1782.

**PART C: NATURE OF SUIT (Check as many as apply)**

**1. Federal Statutes**

☐ Antitrust
☐ Bankruptcy
☐ Banks/Banking
☐ Civil Rights
☐ Commerce
☐ Energy
☐ Commodities
☑ Other (specify): 28 USC 1782

☐ Communications
☐ Consumer Protection
☐ Copyright ☐ Patent
☐ Trademark
☐ Election
☐ Soc. Security
☐ Environmental

☐ Freedom of Information Act
☐ Immigration
☐ Labor
☐ OSHA
☐ Securities
☐ Tax

**2. Torts**

☐ Admiralty/ Maritime
☐ Assault / Defamation
☐ FELA
☐ Products Liability
☐ Other (Specify):

**3. Contracts**

☐ Admiralty/ Maritime
☐ Arbitration
☐ Commercial
☐ Employment
☐ Insurance
☐ Negotiable Instruments
☐ Other Specify

**4. Prisoner Petitions**

☐ Civil Rights
☐ Habeas Corpus
☐ Mandamus
☐ Parole
☐ Vacate Sentence
☐ Other

**5. Other**

☐ Hague Int'l Child Custody Conv.
☐ Forfeiture/Penalty
☐ Real Property
☐ Treaty (specify): _____
☐ Other (specify): _____

**6. General**

☐ Arbitration
☐ Attorney Disqualification
☐ Class Action
☐ Counsel Fees
☐ Shareholder Derivative
☐ Transfer

**7. Will appeal raise constitutional issue(s)?**

☐ Yes ☑ No

Will appeal raise a matter of first impression?

☑ Yes ☐ No

1. Is any matter relative to this appeal still pending below? ☐ Yes, specify: _____ ☑ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

(A) Arises from substantially the same case or controversy as this appeal? ☐ Yes ☑ No

(B) Involves an issue that is substantially similar or related to an issue in this appeal? ☐ Yes ☑ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

Name of Appellant: N/A

| Date: 07/07/2025 | Signature of Counsel of Record: /s/ James E. Tysse |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

## Addendum A

### 1) Nature of the Action

On March 26, 2024, Petitioner commenced the underlying proceedings by filing a petition (the "Petition") pursuant to 28 U.S.C. § 1782, which permits a party to foreign litigation to seek discovery in the U.S. for use in the foreign proceedings.

Respondent is a U.S. law firm with foreign offices. Petitioner is a former equity holder in Respondent's foreign client, Fortenova. Petitioner was sanctioned by the EU in 2022. Attorneys in Respondent's London office have advised Fortenova since 2019 on a number of legal matters, including providing legal counsel since 2022 in connection with issues arising from the presence of sanctioned holders in its capital structure.

The Petition seeks discovery of documents and communications from Respondent relating to its representation of Fortenova. Respondent opposed the Petition in its entirety.

### 2) The Result Below

On July 30, 2024, Magistrate Judge Tarnofsky issued a Report and Recommendation ("R&R") granting in part and denying in part the Petition. On August 27, 2024, Akin filed its Objections to the R&R. On September 20, 2024, Petitioner filed its Opposition to Respondent's Objections to the R&R. On May 30, 2025, Judge Engelmayer entered an Order adopting the R&R in full, granting in part and denying in part the Petition and directing the clerk to close the case.

### 3) Notice of Appeal and District Court Docket Sheet

A copy of the Notice of Appeal is attached as Attachment 1.
A copy of the District Court docket sheet is attached as Attachment 2.

### 4) Relevant Opinions/Orders

A copy of the Order entered on May 30, 2025 is attached as Attachment 3.
A copy of the Report and Recommendation entered on July 30, 2024 is attached as Attachment 4.

## Addendum B

The issues to be raised on appeal are as follows:

1) Whether the district court erred in holding that Petitioner established the jurisdictional requirements to seek discovery under 28 U.S.C. § 1782.

2) Whether the district court abused its discretion in granting in part the Petition, particularly in light of *Kiobel by Samkalden v. Cravath Swaine & Moore LLP*, 895 F.3d 238, 246 (2d Cir. 2018).

This Court "review[s] *de novo* a district court's ruling that a petition satisfies Section 1782's jurisdictional requirements" and "review[s] the decision to grant a Section 1782 petition for abuse of discretion." *Kiobel*, 895 F.3d at 243-244; *see Palin v. New York Times Co.*, 113 F.4th 245, 269 (2d Cir. 2024) ("Either an error of law or a clear error of fact may constitute an abuse of discretion.") (internal citation and quotations omitted).

# ATTACHMENT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE EX PARTE APPLICATION OF SBK ART LLC,<br><br>*Petitioner*,<br><br><br>*for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in foreign proceedings* | Case No. 1:24-mc-00147-PAE-RFT |

<u>**NOTICE OF APPEAL**</u>

Notice is hereby given that Respondent Akin Gump Strauss Hauer & Feld LLP ("<u>Respondent</u>"), by its undersigned counsel, hereby appeals to the United States Court of Appeals for the Second Circuit from the United States District Court for the Southern District of New York's Opinion and Order dated May 30, 2025 (ECF No. 57), which granted in part and denied in part Petitioner's petition to obtain discovery from Respondent pursuant to 28 U.S.C. § 1782, as well as all other orders encompassed therein.

Dated:   June 20, 2025                     Respectfully submitted,
         New York, New York
                                           /s/ Anne M. Evans

                                           Stephen M. Baldini
                                           Anne M. Evans
                                           Sean M. Nolan
                                           Daniel Slemmer
                                           AKIN GUMP STRAUSS HAUER & FELD LLP
                                           One Bryant Park
                                           New York, New York 10036
                                           sbaldini@akingump.com
                                           aevans@akingump.com
                                           snolan@akingump.com
                                           dslemmer@akingump.com
                                           (212) 872-1000

                                           James E. Tysse
                                           Lide E. Paterno
                                           AKIN GUMP STRAUSS HAUER & FELD LLP
                                           2001 K Street NW
                                           Washington, DC 20006
                                           jtysse@akingump.com
                                           lpaterno@akingump.com
                                           (202) 887-4000

# ATTACHMENT 2

Query     Reports     Utilities     Help     Log Out

CLOSED,APPEAL,CASREF,ECF,RELATED

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:24-mc-00147-PAE-RFT

In Re: SBK ART LLC                                         Date Filed: 03/26/2024
Assigned to: Judge Paul A. Engelmayer                      Date Terminated: 05/30/2025
Referred to: Magistrate Judge Robyn F. Tarnofsky
Related Case:  1:24-mc-00142-PAE-RFT
Cause: M 77 Application to have subpoena issued to person living
in this district re: action in foreign cou

**In Re**

**SBK ART LLC**                              represented by   **Adam Yaeger**
                                                              Mawson Infrastructure Group, Inc.
                                                              950 Railroad Ave
                                                              Midland, PA 15059
                                                              917-855-5956
                                                              Email: adam.yaeger@mawsoninc.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Alexander Herman Shapiro**
                                                              Ford O'Brien Landy LLP
                                                              275 Madison Avenue
                                                              Ste Fl. 24
                                                              New York, NY 10016
                                                              212-858-0040
                                                              Email: ashapiro@fordobrien.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Michael Andrew Piazza**
                                                              Cm Law PLLC
                                                              General Mail
                                                              13101 Preston Road
                                                              Suite 110-1500
                                                              Dallas, TX 75240
                                                              213-550-7701
                                                              Email: mpiazza@cm.law
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Robert Seabrook Landy**
                                                              Ford O'Brien Landy LLP
                                                              275 Madison Avenue
                                                              Ste Fl. 24
                                                              New York, NY 10016
                                                              212-858-0040
                                                              Fax: 212-256-1047

Email: rlandy@fordobrien.com
*ATTORNEY TO BE NOTICED*

**Respondent**

**Akin Gump Strauss Hauer & Feld LLP**     represented by     **Stephen Michael Baldini**
Akin Gump Strauss Hauer & Feld LLP
(NYC)
One Bryant Park
New York, NY 10036
(212) 872-1062
Fax: (212) 407-3262
Email: sbaldini@akingump.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anne Morrill Evans**
Akin Gump Strauss Hauer & Feld LLP
(NYC)
One Bryant Park
New York, NY 10036
(212)-872-8042
Fax: (212)-872-1002
Email: aevans@akingump.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/26/2024 | 1 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** PETITION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. 1782 TO TAKE DISCOVERY. (Filing Fee $ 405.00, Receipt Number ANYSDC-29134180).Document filed by SBK ART LLC. (Attachments: # 1 Proposed Order Proposed Order).(Landy, Robert) Modified on 3/27/2024 (vba). (Entered: 03/26/2024) |
| 03/26/2024 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by SBK ART LLC..(Landy, Robert) (Entered: 03/26/2024) |
| 03/26/2024 | 3 | DECLARATION of Michael A. Piazza in Support re: 1 Petition (Other). Document filed by SBK ART LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I).(Landy, Robert) (Entered: 03/26/2024) |
| 03/26/2024 | 4 | DECLARATION of Dr. Gabriel Lansky in Support re: 1 Petition (Other). Document filed by SBK ART LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 (Part 1), # 3 Exhibit 2 (Part 2), # 4 Exhibit 3 (Part 1), # 5 Exhibit 3 (Part 2)).(Landy, Robert) (Entered: 03/26/2024) |
| 03/26/2024 | 5 | DECLARATION of John Refalo in Support re: 1 Petition (Other). Document filed by SBK ART LLC. (Attachments: # 1 Exhibit 1).(Landy, Robert) (Entered: 03/26/2024) |
| 03/26/2024 | 6 | MEMORANDUM OF LAW in Support re: 1 Petition (Other) . Document filed by SBK ART LLC. (Attachments: # 1 Exhibit A (Sealed)).(Landy, Robert) (Entered: 03/26/2024) |
| 03/26/2024 | 7 | MISCELLANEOUS COVER SHEET filed..(Landy, Robert) (Entered: 03/26/2024) |
| 03/26/2024 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Robert Seabrook Landy to RE-FILE Document No. 1 Petition (Other). The filing is deficient for the following reason(s): the wrong event type was used to file the** |

| | | |
|---|---|---|
| | | **pleading;. Re-file the pleading using anevent type found under the event list Miscellaneous Case Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. If the deficiency/deficiencies are not corrected within five (5) days per Amended Standing Order 15-mc-00131 this case will be administratively closed. Initial Pleading due by 4/1/2024. (vba)** (Entered: 03/27/2024) |
| 03/27/2024 | 8 | MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY . (Filing Fee $ 52.00, Receipt Number ANYSDC-29136263)Document filed by SBK ART LLC. (Attachments: # 1 Proposed Order Proposed Order)(Landy, Robert) (Entered: 03/27/2024) |
| 03/27/2024 | 9 | NOTICE OF APPEARANCE by Michael Andrew Piazza on behalf of SBK ART LLC.. (Piazza, Michael) (Entered: 03/27/2024) |
| 03/28/2024 | | Case Designated ECF. (vba) (Entered: 03/28/2024) |
| 03/28/2024 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Michael Andrew Piazza. The party information for the following party/parties has been modified: Michael Andrew Piazza. The information for the party/parties has been modified for the following reason/reasons: party role was entered incorrectly;. (vba) (Entered: 03/28/2024) |
| 03/28/2024 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED ORDER. Notice to attorney Michael Andrew Piazza to RE-FILE Document No. 8 MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY . (Filing Fee $ 52.00, Receipt Number ANYSDC-29136263). The filing is deficient for the following reason(s): the wrong event type was used to file the proposed order; Re-file the document using the event type Proposed Order found under the event list Proposed Orders. - select the correct filer/filers - attach the correct signed (scanned signature image) and dated PDF. (vba) (Entered: 03/28/2024) |
| 03/28/2024 | | MISCELLANEOUS CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Lewis A. Kaplan. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at http://https://nysd.uscourts.gov/rules/ecf-related-instructions. .(vba) (Entered: 03/28/2024) |
| 03/28/2024 | 10 | PROPOSED ORDER. Document filed by SBK ART LLC. Related Document Number: 8 .. (Landy, Robert) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 03/28/2024) |
| 03/28/2024 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 10 Proposed Order was reviewed and approved as to form. (tp) (Entered: 03/28/2024) |
| 03/28/2024 | 11 | MOTION to Seal *CERTAIN MATERIALS IN CONNECTION WITH SBK ART LLCS PETITION FOR AN ORDER PURSUANT TO 28 USC § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS*. Document filed by SBK ART LLC..(Landy, Robert) (Entered: 03/28/2024) |
| 03/28/2024 | 12 | MEMORANDUM OF LAW in Support re: 11 MOTION to Seal *CERTAIN MATERIALS IN CONNECTION WITH SBK ART LLCS PETITION FOR AN ORDER PURSUANT TO 28 USC § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS*. . Document filed by SBK ART LLC..(Landy, Robert) (Entered: 03/28/2024) |

| 03/28/2024 | 13 | ***SELECTED PARTIES***DECLARATION of Robert S. Landy in Support re: 11 MOTION to Seal *CERTAIN MATERIALS IN CONNECTION WITH SBK ART LLCS PETITION FOR AN ORDER PURSUANT TO 28 USC § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS..* Document filed by SBK ART LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)Motion or Order to File Under Seal: 11 .(Landy, Robert) (Entered: 03/28/2024) |
|---|---|---|
| 04/01/2024 | | NOTICE OF REDESIGNATION TO ANOTHER MAGISTRATE JUDGE. The above entitled action has been redesignated to Magistrate Judge Barbara Moses to handle matters that may be referred in this case. Please note that this is a reassignment of the designation only. (vba) (Entered: 04/01/2024) |
| 04/03/2024 | 14 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement) and Dispositive Motion (i.e., motion requiring a Report and Recommendation): All such motions. Referred to Magistrate Judge Barbara C. Moses. Motions referred to Barbara C. Moses. (Signed by Judge Lewis A. Kaplan on 4/3/2024) (tg) (Entered: 04/03/2024) |
| 04/04/2024 | | Magistrate Judge Robyn F. Tarnofsky is so redesignated to handle matters that may be referred in this case. (laq) (Entered: 04/04/2024) |
| 04/04/2024 | | NOTICE OF REASSIGNMENT OF A REFERRAL TO ANOTHER MAGISTRATE JUDGE. The referral in the above entitled action has been reassigned to Magistrate Judge Robyn F. Tarnofsky, for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Magistrate Judge Barbara C. Moses no longer referred to the case. Motions referred to Robyn F. Tarnofsky. (laq) (Entered: 04/04/2024) |
| 04/15/2024 | 15 | LETTER addressed to Judge Lewis A. Kaplan from Robert S. Landy dated April 15, 2024 re: Request for Administrative Consolidation. Document filed by SBK ART LLC..(Landy, Robert) (Entered: 04/15/2024) |
| 04/18/2024 | 16 | MEMO ENDORSEMENT granting 11 Motion to Seal. ENDORSEMENT: Petitioner's application for leave to file under seal is GRANTED. The Clerk of Court is respectfully requested to terminate ECF 11. (Signed by Magistrate Judge Robyn F. Tarnofsky on 4/18/2024) (ate) Modified on 5/10/2024 (ate). (Entered: 04/18/2024) |
| 04/18/2024 | 17 | ORDER: SBK is directed to serve Akin with the petition, all supporting papers, and a copy of this Order by April 22, 2024 and to file proof of such service on the docket on the same day. Akin's response to SBK's petition, if any, is due May 6, 2024. Petitioners' reply, if any, is due May 13, 2024. ( Replies due by 5/13/2024., Service due by 4/22/2024.) (Signed by Magistrate Judge Robyn F. Tarnofsky on 4/18/2024) (ate) (Entered: 04/18/2024) |
| 04/22/2024 | 18 | NOTICE OF APPEARANCE by Adam Yaeger on behalf of SBK ART LLC..(Yaeger, Adam) (Entered: 04/22/2024) |
| 04/22/2024 | 19 | AFFIDAVIT OF SERVICE of 1782 Application and supporting documents served on Akin Gump Strauss Hauer & Feld LLP on 4/19/2024. Service was made by MAIL. Document filed by SBK ART LLC. (Attachments: # 1 Exhibit Email Correspondence).(Yaeger, Adam) (Entered: 04/22/2024) |
| 04/22/2024 | | CASE ACCEPTED AS RELATED. Create association to 1:24-mc-00142-PAE. Notice of Assignment to follow. (vba) (Entered: 04/22/2024) |
| 04/22/2024 | | NOTICE OF CASE REASSIGNMENT to Judge Paul A. Engelmayer. Judge Lewis A. Kaplan is no longer assigned to the case. (vba) (Entered: 04/22/2024) |

| | | |
|---|---|---|
| 04/23/2024 | 20 | NOTICE OF APPEARANCE by Stephen Michael Baldini on behalf of Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 04/23/2024) |
| 04/23/2024 | 21 | NOTICE OF APPEARANCE by Anne Morrill Evans on behalf of Akin Gump Strauss Hauer & Feld LLP..(Evans, Anne) (Entered: 04/23/2024) |
| 05/06/2024 | 22 | RESPONSE in Opposition to Motion re: 8 MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY . (Filing Fee $ 52.00, Receipt Number ANYSDC-29136263) . Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 05/06/2024) |
| 05/06/2024 | 23 | DECLARATION of Liz Osborne in Support re: 22 Response in Opposition to Motion,. Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 05/06/2024) |
| 05/06/2024 | 24 | DECLARATION of Ross Denton in Support re: 22 Response in Opposition to Motion,. Document filed by Akin Gump Strauss Hauer & Feld LLP. (Attachments: # 1 Exhibit RD-1, # 2 Exhibit RD-2, # 3 Exhibit RD-3, # 4 Exhibit RD-4, # 5 Exhibit RD-5, # 6 Exhibit RD-6, # 7 Exhibit RD-7, # 8 Exhibit RD-8, # 9 Exhibit RD-9, # 10 Exhibit RD-10, # 11 Exhibit RD-11, # 12 Exhibit RD-12, # 13 Exhibit RD-13, # 14 Exhibit RD-14, # 15 Exhibit RD-15, # 16 Exhibit RD-16, # 17 Exhibit RD-17, # 18 Exhibit RD-18, # 19 Exhibit RD-19, # 20 Exhibit RD-20, # 21 Exhibit RD-21, # 22 Exhibit RD-22).(Baldini, Stephen) (Entered: 05/06/2024) |
| 05/06/2024 | 25 | DECLARATION of Daniel Buttigieg in Support re: 22 Response in Opposition to Motion,. Document filed by Akin Gump Strauss Hauer & Feld LLP. (Attachments: # 1 Exhibit DB-1, # 2 Exhibit DB-2, # 3 Exhibit DB-3, # 4 Exhibit DB-4, # 5 Exhibit DB-5, # 6 Exhibit DB-6, # 7 Exhibit DB-7, # 8 Exhibit DB-8, # 9 Exhibit DB-9, # 10 Exhibit DB-10, # 11 Exhibit DB-11, # 12 Exhibit DB-12).(Baldini, Stephen) (Entered: 05/06/2024) |
| 05/06/2024 | 26 | DECLARATION of Christiaan Zijderveld in Support re: 22 Response in Opposition to Motion,. Document filed by Akin Gump Strauss Hauer & Feld LLP. (Attachments: # 1 Exhibit CZ-1, # 2 Exhibit CZ-2, # 3 Exhibit CZ-3, # 4 Exhibit CZ-4, # 5 Exhibit CZ-5, # 6 Exhibit CZ-6, # 7 Exhibit CZ-7, # 8 Exhibit CZ-8, # 9 Exhibit CZ-9, # 10 Exhibit CZ-10, # 11 Exhibit CZ-11, # 12 Exhibit CZ-12, # 13 Exhibit CZ-13, # 14 Exhibit CZ-14, # 15 Exhibit CZ-15, # 16 Exhibit CZ-16, # 17 Exhibit CZ-17, # 18 Exhibit CZ-18, # 19 Exhibit CZ-19, # 20 Exhibit CZ-20, # 21 Exhibit CZ-21, # 22 Exhibit CZ-22, # 23 Exhibit CZ-23, # 24 Exhibit CZ-24, # 25 Exhibit CZ-25, # 26 Exhibit CZ-26, # 27 Exhibit CZ-27, # 28 Exhibit CZ-28, # 29 Exhibit CZ-29, # 30 Exhibit CZ-30, # 31 Exhibit CZ-31, # 32 Exhibit CZ-32, # 33 Exhibit CZ-33, # 34 Exhibit CZ-34, # 35 Exhibit CZ-35, # 36 Exhibit CZ-36). (Baldini, Stephen) (Entered: 05/06/2024) |
| 05/06/2024 | 27 | DECLARATION of Robert Pees in Support re: 22 Response in Opposition to Motion,. Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 05/06/2024) |
| 05/09/2024 | 28 | NOTICE OF APPEARANCE by Alexander Herman Shapiro on behalf of SBK ART LLC..(Shapiro, Alexander) (Entered: 05/09/2024) |
| 05/10/2024 | 29 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply addressed to Magistrate Judge Robyn F. Tarnofsky from Alexander H. Shapiro dated May 10, 2024. Document filed by SBK ART LLC..(Shapiro, Alexander) (Entered: 05/10/2024) |
| 05/10/2024 | 30 | ORDER granting 29 Letter Motion for Extension of Time to File Response/Reply re 29 CONSENT LETTER MOTION for Extension of Time to File Response/Reply addressed to Magistrate Judge Robyn F. Tarnofsky from Alexander H. Shapiro dated May 10, 2024. Petitioner's application is granted. Petitioner shall file its reply by May 31, 2024. No |

| | | |
|---|---|---|
| | | further extensions will be granted absent good cause shown. The Clerk of Court is respectfully directed to terminate ECF 29. Replies due by 5/31/2024. (Signed by Magistrate Judge Robyn F. Tarnofsky on 5/10/2024) (ate) (Entered: 05/10/2024) |
| 05/30/2024 | 31 | LETTER MOTION for Leave to File Excess Pages *on Reply Submission (Uncontested)* addressed to Magistrate Judge Robyn F. Tarnofsky from Robert S. Landy dated May 30, 2024. Document filed by SBK ART LLC..(Landy, Robert) (Entered: 05/30/2024) |
| 05/30/2024 | 32 | ORDER granting 31 Letter Motion for Leave to File Excess Pages (HEREBY ORDERED by Magistrate Judge Robyn F. Tarnofsky)(Text Only Order) (ah) (Entered: 05/30/2024) |
| 05/31/2024 | 33 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 8 MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY . (Filing Fee $ 52.00, Receipt Number ANYSDC-29136263) . Document filed by SBK ART LLC, Akin Gump Strauss Hauer & Feld LLP. (Attachments: # 1 Affidavit Declaration of Robert S. Landy, # 2 Exhibit 1 - Lansky Declaration with Exhibit, # 3 Exhibit 2 - Al-Karim Declaration, # 4 Exhibit 3 - Zandbergen Declaration, # 5 Exhibit 4 - Refalo Declaration)Motion or Order to File Under Seal: 16 .(Landy, Robert) (Entered: 05/31/2024) |
| 05/31/2024 | 34 | REPLY MEMORANDUM OF LAW in Support re: 8 MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY . (Filing Fee $ 52.00, Receipt Number ANYSDC-29136263) . Document filed by SBK ART LLC. (Attachments: # 1 Affidavit Declaration of Robert S. Landy, # 2 Exhibit 1 - Lansky Declaration with Exhibit, # 3 Exhibit 2 - Al-Karim Declaration, # 4 Exhibit 3 - Zandbergen Declaration, # 5 Exhibit 4 - Refalo Declaration).(Landy, Robert) (Entered: 05/31/2024) |
| 07/01/2024 | 35 | ORDER: Accordingly, Petitioner is ORDERED by July 11, 2024 to make a submission containing the following information (or providing citations if Petitioner believes the information is contained within existing filings): As further set forth by this Order. Respondents are ORDERED, by July 17, 2024, to file a submission that (a) addresses the specific nature of the burdens that Respondents would face if the Court were to permit issuance of subpoenas for discovery relating to non-privileged materials either (i) "uniquely possessed by Akin" or (ii) shared only "with third parties other than" Fortenova Group and the European Union Council; and (b) includes any responses that Respondents wish to make to Petitioner's anticipated filing pursuant to this Order. A telephonic conference on the Application will be held on July 23, 2024, at 3:30 pm. The parties are directed to dial 646-453-4442; Access Code: 974 788 793# at the scheduled time. If the scheduled conference date is not convenient for the parties, counsel should e-mail my chambers at TarnofskyNYSDChambers@nysd.uscourts.gov by July 3, 2024 to propose three alternative dates and times for the hearing during the week of July 22, 2024. SO ORDERED. ( Telephone Conference set for 7/23/2024 at 03:30 PM before Magistrate Judge Robyn F. Tarnofsky.) (Signed by Magistrate Judge Robyn F. Tarnofsky on 7/1/2024) (tg) (Entered: 07/01/2024) |
| 07/08/2024 | 36 | ORDER From my further review of the parties' initial submissions, I determined that I need additional information on the status of the materials Petitioner seeks that Respondents shared with the European Union Council. Respondents appear to take the position that "much of the discovery Petitioner seeks is either privileged or already possessed by" the European Union Council, which Respondents characterize as Petitioner's true adversary in the EU Action (ECF 22, Respondents' Opp. at 12-13). Based on this premise, Respondents conclude that Section 1782 is an inappropriate mechanism for obtaining discovery of materials that Respondents shared with the European Union Council, because Section 1782 does not permit discovery from the adversaries in the underlying foreign proceeding or of |

| | | |
|---|---|---|
| | | privileged materials. Respondents are directed to include in their submission of July 17, 2024 the following additional information: 1) support for the contention that the European Union Council is Petitioner's true adversary in the EU Action; 2) support for the proposition that Petitioner could obtain documents provided by Respondents to the European Union Council either from the European Union Council or from the Fortenova Group, either through discovery in the EU Action or otherwise; 3) support for the proposition that documents provided to the European Union Council, a government body and not an Akin client, would nevertheless be considered privileged under U.S. law or under any relevant foreign law. To the extent that Petitioner wishes to respond to any of the information provided by Respondents on these three points, Petitioner may do so in a submission to be filed by July 19, 2024. (And as further set forth herein.) SO ORDERED. (Signed by Magistrate Judge Robyn F. Tarnofsky on 7/8/2024) (jca) (Entered: 07/08/2024) |
| 07/11/2024 | 37 | RESPONSE re: 35 Order,,,,,, Set Deadlines/Hearings,,,,, . Document filed by SBK ART LLC. (Attachments: # 1 Affidavit Declaration of Robert S. Landy, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C).(Landy, Robert) (Entered: 07/11/2024) |
| 07/17/2024 | 38 | RESPONSE re: 35 Order,,,,,, Set Deadlines/Hearings,,,,, 36 Order,,,,,,, . Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 07/17/2024) |
| 07/17/2024 | 39 | DECLARATION of Ross Denton in Support re: 38 Response. Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 07/17/2024) |
| 07/17/2024 | 40 | DECLARATION of Richard Hornshaw in Support re: 38 Response. Document filed by Akin Gump Strauss Hauer & Feld LLP. (Attachments: # 1 Exhibit RH-1: Section 2 - Fiduciary and Other Equitable Duties, # 2 Exhibit RH-2: The Law Society - Who owns the file?).(Baldini, Stephen) (Entered: 07/17/2024) |
| 07/17/2024 | 41 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE 44 Declaration) -** DECLARATION of Robert H. Pees in Support re: 38 Response. Document filed by Akin Gump Strauss Hauer & Feld LLP. (Baldini, Stephen) Modified on 7/24/2024 (db). As per ECF-ERROR Email Correspondence Received on 7/24/2024 @ 9:58am. (Entered: 07/17/2024) |
| 07/19/2024 | 42 | ***SELECTED PARTIES*** RESPONSE re: 38 Response . Document filed by SBK ART LLC, Akin Gump Strauss Hauer & Feld LLP. Motion or Order to File Under Seal: 16 .(Landy, Robert) (Entered: 07/19/2024) |
| 07/19/2024 | 43 | RESPONSE re: 38 Response . Document filed by SBK ART LLC..(Landy, Robert) (Entered: 07/19/2024) |
| 07/23/2024 | 45 | Minute Entry for proceedings held before Magistrate Judge Robyn F. Tarnofsky: Telephone Conference held on 7/23/2024. (ah) (Entered: 07/24/2024) |
| 07/24/2024 | 44 | DECLARATION of Robert H. Pees in Support re: 38 Response. Document filed by Akin Gump Strauss Hauer & Feld LLP. (Attachments: # 1 Exhibit A - 2024 Annual Report of Limited Liability Partnership (TX), # 2 Exhibit B - Biannual Report as a Foreign Entity (DC)).(Baldini, Stephen) (Entered: 07/24/2024) |
| 07/30/2024 | 46 | REPORT AND RECOMMENDATIONS re: 8 MISCELLANEOUS CASE INITIATING DOCUMENT - MOTION EX PARTE PETITION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE DISCOVERY . (Filing Fee $ 52.00, Receipt Number ANYSDC-29136263) filed by SBK ART LLC. For the foregoing reasons, I respectfully recommend that the Application be GRANTED and that Petitioner be authorized to serve on Respondents subpoenas that are modified as described herein. Objections to R&R due by 8/13/2024 (Signed by Magistrate Judge Robyn F. Tarnofsky on 7/30/2024) (jca) (Entered: 07/30/2024) |

| 08/01/2024 | 47 | LETTER addressed to Judge Paul A. Engelmayer from Anne M. Evans dated August 1, 2024 re: Objection Extension. Document filed by Akin Gump Strauss Hauer & Feld LLP.. (Evans, Anne) (Entered: 08/01/2024) |
| --- | --- | --- |
| 08/01/2024 | 48 | MEMO ENDORSEMENT on re: 47 Letter filed by Akin Gump Strauss Hauer & Feld LLP, 46 Report and Recommendations. Set Deadlines/Hearing as to 47 Letter, 46 Report and Recommendations:( Objections to R&R due by 8/27/2024) ENDORSEMENT: GRANTED. (Signed by Judge Paul A. Engelmayer on 8/1/2024) (tro) (Entered: 08/01/2024) |
| 08/06/2024 | 49 | TRANSCRIPT of Proceedings re: STATUS CONFERENCE held on 7/23/2024 before Magistrate Judge Robyn F. Tarnofsky. Court Reporter/Transcriber: Adrienne Mignano, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/27/2024. Redacted Transcript Deadline set for 9/6/2024. Release of Transcript Restriction set for 11/4/2024.(js) (Entered: 08/06/2024) |
| 08/06/2024 | 50 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a STATUS CONFERENCE proceeding held on 7/23/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(js) (Entered: 08/06/2024) |
| 08/27/2024 | 51 | OBJECTION to 46 Report and Recommendations Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 08/27/2024) |
| 08/27/2024 | 52 | DECLARATION of Robert H. Pees re: 51 Objection to Report and Recommendations . Document filed by Akin Gump Strauss Hauer & Feld LLP..(Baldini, Stephen) (Entered: 08/27/2024) |
| 09/16/2024 | 53 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Paul A. Engelmayer from Alexander H. Shapiro dated September 16, 2024. Document filed by SBK ART LLC..(Shapiro, Alexander) (Entered: 09/16/2024) |
| 09/17/2024 | 54 | ORDER granting 53 Letter Motion for Extension of Time to File Response/Reply. GRANTED. SO ORDERED. Replies due by 9/20/2024. (Signed by Judge Paul A. Engelmayer on 9/17/2024) (tg) (Entered: 09/17/2024) |
| 09/20/2024 | 55 | OPPOSITION BRIEF re: 51 Objection to Report and Recommendations . Document filed by SBK ART LLC..(Landy, Robert) (Entered: 09/20/2024) |
| 09/20/2024 | 56 | ***SELECTED PARTIES*** OPPOSITION BRIEF re: 51 Objection to Report and Recommendations . Document filed by SBK ART LLC, Akin Gump Strauss Hauer & Feld LLP.Motion or Order to File Under Seal: 16 .(Landy, Robert) (Entered: 09/20/2024) |
| 05/30/2025 | 57 | OPINION AND ORDER for 46 Report and Recommendations,, 8 Motion for Miscellaneous Relief, filed by SBK ART LLC. For the foregoing reasons, the Court adopts the Report and rejects Akin's objections to the Report. The Court accordingly grants the Petition in part and denies it in part. The Clerk of Court is respectfully directed to terminate all pending motions and to close this case, subject to the right of the parties to seek to reopen it for the limited purpose of seeking judicial resolution of discrete discovery disputes (e.g., privilege objections). SO ORDERED. (Signed by Judge Paul A. Engelmayer on 5/30/2025) (tg) (Entered: 05/30/2025) |

| 06/20/2025 | 58 | NOTICE OF APPEAL from 57 Order Adopting Report and Recommendations,,. Document filed by Akin Gump Strauss Hauer & Feld LLP. Filing fee $ 605.00, receipt number ANYSDC-31265043. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Evans, Anne) (Entered: 06/20/2025) |
|---|---|---|
| 06/20/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 58 Notice of Appeal,..(nd) (Entered: 06/20/2025) |
| 06/20/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 58 Notice of Appeal, filed by Akin Gump Strauss Hauer & Feld LLP were transmitted to the U.S. Court of Appeals..(nd) (Entered: 06/20/2025) |
| 06/24/2025 | 59 | SUBPOENA ISSUED for Akin Gump Strauss Hauer & Feld LLP and Akin Gump LLP on 7/7/25 at 9:30 a.m..Document filed by SBK ART LLC..(Landy, Robert) (Entered: 06/24/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/02/2025 15:00:26 | | | |
| **PACER Login:** | nyag0054 | **Client Code:** | 490006.0013 |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-mc-00147-PAE-RFT |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

# ATTACHMENT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

*IN RE* EX PARTE APPLICATION OF SBK ART LLC

---

24 Misc. 147 (PAE) (RFT)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case involves an application under 28 U.S.C. § 1782 for discovery in aid of foreign proceedings. Petitioner SBK ART LLC ("SBK") seeks documents and deposition testimony from a law firm, respondent Akin Gump Strauss Hauer & Feld, LLP, and its affiliate, Akin Gump, LLP (collectively, "Akin"). SBK seeks these for use in pending civil proceedings in Malta and the General Court of the European Union and contemplated civil proceedings in the Netherlands. It contends that these materials would support its claim in foreign litigation that Akin waged an advocacy campaign, on behalf of SBK's corporate adversaries, to have SBK sanctioned by the EU Council as part of a scheme to dilute SBK's ownership position in a Croatian company, Fortenova Grupa d.d. ("Fortenova").

On April 3, 2024, the Court referred SBK's application to United States Magistrate Judge Robyn Tarnofsky. Dkt. 14. After extensive briefing and argument, Judge Tarnofsky issued a Report and Recommendation. Dkt. 46 (the "Report"). It recommends that the Court (1) grant a portion of SBK's discovery application, in particular, its request for materials relating to Akin's relevant lobbying efforts; but (2) deny discovery as to the substantial majority of the application, including to the extent the application sought materials relating to Akin's provision of legal services.

Akin has filed objections to the Report, Dkt. 51 ("Akin Obj."), to which SBK has responded, Dkt. 55 ("SBK Response"). SBK does not challenge the aspects of the Report that are adverse to it, that is, the limits on discovery that the Report proposes.

For the reasons that follow, the Court adopts Judge Tarnofsky's thorough and well-reasoned Report in its entirety. It accordingly authorizes SBK to obtain discovery from Akin, but only within tightly defined parameters.

## I. Background[1]

The following summary focuses on the facts necessary for an assessment of the limited issues presented.

### A. The Parties

The foreign proceedings in aid of which SBK seeks discovery here center on a battle for corporate control of Fortenova, a food and retail company based in Zagreb, Croatia, which operates in several countries in southeastern Europe. Report at 2. SBK, a Russian entity, claims it is the rightful owner of an approximately 42% interest in Fortenova through its ownership of depositary receipts. *Id.*

---

[1] The facts summarized in this section are primarily drawn from the Report, Dkt. 46, Akin's objections, Dkt. 51, and the attached declaration of Robert H. Pees, Dkt. 52, and SBK's response, Dkt. 55. The Court has also considered the parties' pleadings and voluminous submissions to Judge Tarnofsky, including the Petition, Dkt. 8 ("Pet."), and the attached declarations of Michael A. Piazza, Dkt. 3 ("Piazza Decl."), and Gabriel Lansky, Dkt. 4 ("Lansky First Decl."); SBK's brief in support, Dkt. 6, Akin's brief in response, Dkt. 22, and the attached declarations of Liz Osborne, Dkt. 23 ("Osborne Decl."), Ross Denton, Dkt. 24 ("Denton Decl."), Daniel Buttigieg, Dkt. 25 ("Buttigieg Decl."), Christiaan Zijderveld, Dkt. 26 ("Zijderveld Decl."), and Robert H. Pees, Dkt. 27; and SBK's reply brief, Dkt. 33, and the attached declarations of Robert S. Landy, Dkt. 33-1, Gabriel Lansky, Dkt. 33-2 ("Second Lansky Decl."), Ali Al-Karim, 33-3 ("Al-Karim Decl."), Elbert Jan Hendrick Zandbergen, Dkt. 33-4 ("Zandbergen Decl."), and John Refalo, Dkt. 34-5 ("Refalo Decl."); Akin's Responses to Judge Tarnofsky's Orders of July 1 and July 8, 2024, Dkts. 37, 38, and the attached declarations of Ross Denton, Dkt. 39 ("Second Denton Decl."), Richard Hornshaw, Dkt. 40, and Robert H. Pees, Dkt. 44; and SBK's Response to Judge Tarnofsky's Orders of July 1 and July 8, 2024, Dkt. 43.

2

Akin is a multinational law firm. Its London office has advised Fortenova on "issues arising from the presence of sanctioned holders in its capital structure." *Id.* at 3 (quoting Osborne Decl. ¶ 6). Akin is also a registered lobbyist for Fortenova, including in the United States. *Id.*

### B.    SBK Is Sanctioned by the EU and Frozen Out of Fortenova

In April 2022, the Russian bank PJSC Sberbank of Russia ("Sberbank") placed its Fortenova holdings into its wholly owned special purpose vehicle, SBK. *See id.* at 2; Osborne Decl. ¶ 7. At the time, the second-largest minority owner of Fortenova was Open Pass Limited ("Open Pass"), a Maltese company owned by Pavao Vujnovac. *See* Report at 2; Dkt. 13-1, at 2.

After Russia's invasion of Ukraine in 2022, the United States, the United Kingdom, and the European Union ("EU") placed Sberbank on their respective sanctions lists. Report at 2. Thereafter, Sberbank sold its stake in SBK to Saif J.S.M. Alketbi ("Alketbi"), a United Arab Emirates-based businessman. *Id.* On December 16, 2022, the EU Council added SBK to its list of sanctioned entities, on the grounds that (1) Sberbank still retained "effective control" over SBK and (2) that Sberbank had rendered financial assistance to the Russian Federation. *See id.* at 4; *see* Denton Decl. ¶ 7. Alketbi was not individually sanctioned. *See* Report at 4–5.

SBK alleges that, at Vujnovac's behest, Fortenova moved to block SBK from exercising its voting rights in Fortenova, on account of its sanctioned status. *See id.* at 3–4. SBK alleges that, stripped of its voting rights, it was powerless to block major changes to Fortenova's corporate structure, and that these resulted, in January 2023, in the Vujnovac-controlled Open Pass gaining control of Fortenova (the "Corporate Changes"). *Id.* at 4–5. In December 2023, Open Pass arranged for the sale of a Fortenova entity at an artificially depressed price. *Id.*; Dkt. 13-1, at 12. That, SBK claims, benefitted Open Pass and Fortenova insiders at the expense

of minority shareholders, including SBK. *See* Report at 5. As a result of these transactions, SBK alleges, its stake in Fortenova has been dramatically devalued. *See id.*

### C. Akin's Role in the Alleged Scheme

SBK claims that Akin assisted Vujnovac in his alleged scheme to seize corporate control of Fortenova by exploiting the EU sanctions regime. *See id.* at 3–5. It claims that Vujnovac-affiliated entities and Fortenova's management, allegedly beholden to Vujnovac, directed Akin to lobby the EU Council to sanction SBK. *Id.* As alleged, the lobbying attempted to advance the narrative that SBK remained under Sberbank's control, because its nominal sale to Alketbi had not been a legitimate arm's-length transaction. *Id.*

SBK alleges that these lobbying efforts succeeded. It alleges that, in sanctioning SBK, the EU Council centrally relied on an opinion issued by Akin (the "Akin Opinion"), to the effect that, even after Sberbank had sold its stake in SBK to Alketbi, SBK could not be considered independent of Sberbank. *Id.* at 4. The Akin Opinion had concluded that documents produced by Alketbi in connection with the acquisition were "insufficient to confirm that the transaction . . . [has] resulted in SBK no longer being subject to the asset freeze restrictions imposed on its purported (former) parent company Sberbank[.]" SBK Response at 6–8. Alketbi had previously provided the documents relied upon by the Akin Opinion to Fortenova. That these ended up in Akin's hands, SBK claims, supports that Fortenova had enlisted Akin "in a plan to deny Mr. Alketbi his voting and ownership rights" by lobbying the EU Council to sanction SBK. *Id.* at 7. SBK argues that, considering "the short period of time" between the issuance of the Akin Opinion (December 14, 2022) and the EU's introduction of sanctions against SBK (December 16, 2022), the Akin Opinion "could have ended up with the Council . . . only through the Fortenova management." Report at 4.

4

### D.  Pending and Anticipated Foreign Litigation

SBK seeks discovery here in aid of pending civil suits in Malta and the EU, and anticipated proceedings in the Netherlands.

First, in the Civil Court of Malta, SBK has sued Open Pass and Fortenova for damages caused by the approval of the Corporate Changes (the "Malta Action"). *See* Report at 12. In that action, SBK challenges the transactions by which it was ousted from its ownership position in Fortenova. Its central claim is that Open Pass "devised and perpetrated a scheme to move all valuable assets of the Fortenova Group to a new entity owned and controlled by Mr. Vujnovac at a fraction of its true, fair value." Dkt. 6 at 7.

Second, in the General Court of the European Union, SBK seeks annulment of the sanctions imposed by the EU Council (the "EU Action"). *See* Report at 12. SBK there alleges that it was wrongfully sanctioned based on its earlier association with Sberbank, notwithstanding the fact that Sberbank had sold its stake in SBK to Alketbi.

Third, SBK anticipates filing an action in the Netherlands or another court outside the United States to seek damages caused by the Corporate Changes and other aspects of Fortenova's corporate governance. *See id.* at 7.

### E.  The Instant Petition

On March 26, 2024, SBK filed a petition under 28 U.S.C. § 1782, demanding that Akin produce documents, and submit to deposition testimony, relating to Akin's work in connection with the Akin Opinion, and its efforts to advocate on behalf of Fortenova (and regarding SBK) before the EU Council. *See* Pet.; Dkt. 3, Ex. H.

As to documents, the Petition sought documents—covering the period January 1, 2019 to the present—on the following topics: (1) Alketbi's acquisition of SBK, the Corporate Changes, and Open Pass's control of Fortenova Group, including communications on those topics between

Akin and other entities; (2) Akin's lobbying efforts on behalf of Fortenova Group in the United States, the United Kingdom, or the European Union; and (3) communications between Akin and the U.S. Department of Treasury's Office of Foreign Assets Control, the U.S. State Department, the Dutch Ministry of Finance, the U.K. Office of Financial Sanctions Implementation, the National Bank of Serbia, Croatian government officials and staff, and EU officials and staff. Dkt. 3, Ex. H.

As to deposition testimony, the Petition sought such from Akin about (1) its role in analyzing Alketbi's acquisition of SBK; (2) its role, responsibilities, and lobbying efforts on behalf of the Fortenova Group in the United States, the United Kingdom, the European Union, or before any other relevant authority, including the U.S. Department of Treasury's Office of Foreign Assets Control, the U.S. State Department, the Dutch Ministry of Finance, the U.K. Office of Financial Sanctions Implementation, the National Bank of Serbia, Croatian government officials and staff, and EU officials and staff; (3) the support for its conclusion in the Akin Opinion that Sberbank effectively controls SBK; (4) other information related to the Akin Opinion; (5) information provided to Akin concerning Alketbi's acquisition of SBK, the Corporate Changes, and Vujnovac's ownership and/or control over the Fortenova Group; (6) communications between Akin and a list of enumerated individuals and entities concerning Alketbi's acquisition of SBK, the Corporate Changes, and Vujnovac's ownership and/or control over the Fortenova Group; and (7) Akin's document production. *Id.*

## F.    Procedural History

On March 26, 2024, SBK filed, along with the Petition, a memorandum of law in support, Dkt. 6.[2] On April 3, 2024, the Court referred the Petition to Judge Tarnofsky. Dkt. 14. On May

---

[2] The previous day, SBK submitted a petition under § 1782 seeking discovery from Kroll LLC ("Kroll"), which the Court referred to Judge Tarnofsky. *In re SBK ART LLC*, No. 24 Misc. 142

6

6, Akin filed an opposition to the Petition. Dkts. 22–27. On May 31, 2024, SBK filed a reply.

Dkt. 33. On July 23, 2024, Judge Tarnofsky held argument. Dkt. 45.

On July 30, 2024, Judge Tarnofsky issued the Report, which recommended that the

Petition be granted, but with narrowed discovery parameters, as developed below. On August

27, 2024, Akin filed objections to the Report. Dkt. 51 ("Objections"). On September 20, 2024,

SBK responded to the objections. Dkt. 55 ("Response").

## II.    The Report

The Report's recommendation to authorize, but sharply limit, the discovery sought by

SBK is based on its application of familiar principles under § 1782.

### A.    Legal Framework

Section 1782 authorizes district courts to order discovery from third parties in the United

States for use in foreign proceedings. In relevant part, it provides as follows:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation. The order may be made
> pursuant to a letter rogatory issued, or request made, by a foreign or international
> tribunal or upon the application of any interested person . . . . To the extent that the
> order does not prescribe otherwise, the testimony or statement shall be taken, and
> the document or other thing produced, in accordance with the Federal Rules of Civil
> Procedure.

28 U.S.C. § 1782(a). The statute thus imposes three prerequisites to the issuance of a foreign

discovery order. *See, e.g.*, *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006).

First, the target must "reside" or be "found" in this District. Second, the evidence sought must

be "for use" in a proceeding in a foreign or international tribunal. *See ZF Auto. US, Inc. v.*

---

(PAE) (RFT) (the "Kroll Petition"). After the parties notified Judge Tarnofsky that Kroll did not
oppose the Kroll Petition, she issued a Report and Recommendation, which recommended that it
be granted. *Id.*, Dkt. 12. Kroll thereafter sought, and the Court granted, an extension of its time
to file objections to Judge Tarnofsky's Report until a decision issued in this action. *Id.*, Dkt. 30.

7

*Luxshare, Ltd.*, 596 U.S. 619, 633 (2022). Third, the application must be made by a foreign tribunal or "any interested person." *Schmitz v. Bernstein, Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (citation omitted).

Once those prerequisites have been satisfied, a district court has "broad discretion over the issuance of discovery orders pursuant to § 1782." *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002). In *Intel Corp. v. Advanced Micro Devices, Inc.*, the Supreme Court set out four factors to guide district courts in exercising this discretion:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
>
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance";
>
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
>
> (4) whether the request is "unduly intrusive or burdensome."

542 U.S. 241, 264–65 (2004). These "factors are not to be applied mechanically," and a district court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). A district court's discretion should be exercised sensitive to the statute's "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 244 (quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)).

8

## B.   The Report's Findings

*Statutory and* Intel *Factors*.  The Report found that the Petition satisfied § 1782(a)'s statutory requirements, and that, on balance, the *Intel* discretionary factors favored granting discovery to SBK.  The Petition met the statutory requirements, the Report found, because (1) Akin is found in this District, (2) the discovery sought would be "for use" in the Malta and EU litigation, and (3) SBK is an "interested party."  Report at 11–21.

The Report found that all discretionary factors but one favored granting the Petition.  The first factor disfavored relief, the Report found, because "many of the documents sought by the proposed subpoenas could be demanded by" SBK from Fortenova in foreign proceedings. Report at 29 (citing *Kiobel* 895 F.3d at 245); *cf. Klein v. Altara RK Invs. Ltd.*, No. 24-228-cv, 2025 WL 560105, at *2 (2d Cir. Feb. 20, 2025) ("[W]hen discovery requests are submitted to non-parties pursuant to § 1782, the district court should consider whom the documents are actually being sought for use against.").  But, it concluded, the remaining three factors, which favored granting relief, outweighed the first.  The second and third favored SBK, the Report found, because Akin had not provided "authoritative proof" that the courts in the Malta Action and the EU Action would reject evidence obtained through this proceeding nor did Akin support its claim that SBK "[wa]s acting in bad faith to try to misuse Section 1782" to circumvent UK and EU sanctions regimes.  *Id.* at 34–35.  And, although the Petition as-filed was overbroad in the discovery it sought, the Report found, that defect was curable.  The fourth *Intel* factor therefore did not require outright denial of the Petition.  *See, e.g., Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." (citation omitted)). Rather, the Report concluded, provided that the discovery parameters were adjusted to closely

track the valid litigation needs identified by the Petition, the burden on Akin would be proportionate to SBK's need for discovery. *See* Report at 35–42. On that premise, the Report concluded, the fourth *Intel* factor also favored SBK. *Id.* at 45.

*Discovery Limitations.* As to the fourth factor, the Report recommended narrowing discovery as follows, to ease the burden on Akin. First, document discovery is to be limited to non-privileged materials uniquely possessed by Akin, or that were shared with third parties other than Fortenova, between February 1, 2022 and December 31, 2023 (the "Relevant Period"), and that related to: (1) Alketbi's acquisition of SBK, (2) the Akin Opinion, or (3) the Corporate Changes. *See id.* at 43. Second, as to deposition discovery, it recommended authorizing a single deposition on (1) the above topics, limited to the Relevant Period, and (2) Akin's document production. *Id.*

*Kiobel.* The Report found that the Second Circuit's decision in *Kiobel* supported authorizing *limited* discovery. *Kiobel*, the Report observes, cautions against granting discovery where a petition seeks records from a law firm retained by the petitioner's foreign-litigation adversary, but it does not require a "reflexive[]" denial of such bids. Report at 45; *cf. Kiobel*, 895 F.3d at 248 (denying § 1782 petition where "*Intel* factors, the respect owed to confidentiality orders, and the concerns for lawyer-client relations" all weighed against granting discovery). And here, the Report found, the distinct circumstances distinguished this Petition from *Kiobel*. Principally, Fortenova's "affirmative use of the Akin Opinion by sharing it with the Dutch court and possibly the EU Council move[d] Akin's work on the Akin Opinion out of the category of legal advice provided by legal counsel." Report at 46. And the limited discovery that the Report proposed be authorized would focus on "the discoverable work of a lawyer acting as a lobbyist or business advisor," rather than as legal counselor. *Id.* at 46–47.

The Report thus recommended granting—albeit with major limitations—the Petition's § 1782 application for discovery.

## III.   Discussion

Akin makes three main objections to the Report. Each, it argues, requires the outright denial of the Petition. First, Akin argues that the Petition does not meet § 1782's second statutory requirement—that the requested discovery be "for use" in a foreign proceeding. Akin Obj. at 22. Second, it argues that the Report, in analyzing the third *Intel* factor, did not consider relevant "foreign proof-gathering restrictions." *Id.* at 19. Third, it argues that *Kiobel* requires denial of the Petition, even with the narrowed discovery parameters recommended by the Report. *See id.* at 9, 16, 22.

For the following reasons, Akin's objections, singly or jointly, do not support denying the Petition altogether. Rather, the Report's recommendation to authorize limited discovery is (1) firmly anchored in § 1782's statutory and discretionary factors and (2) consonant with *Kiobel*.

### A.   Statutory "For Use" Requirement

Akin first objects to the Report's finding that the Petition meets § 1782's requirement that the evidence sought be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Akin argues that the documents sought by SBK are not "for use" in the Malta and EU actions because (1) they are not "relevant" to the subject matter of those proceedings; (2) if SBK's sale to Alketbi had been legitimate, as SBK claims, SBK would have corroborating evidence of that and would not need documents from Akin to challenge the EU Council's contrary finding; and (3) the foreign proceedings are "frivolous." These arguments are easily put aside.

11

First, SBK has satisfactorily explained why the discovery that the Report approves is relevant to the ongoing foreign litigation: to support its theory there that Vujnovac and Open Pass, with Akin's assistance, improperly seized corporate control of Fortenova by exploiting the EU sanctions regime. With respect to the Malta Action, the discovery at issue may provide evidence of a scheme to block SBK from exercising the voting rights associated with its ownership interests in Fortenova. Refalo Decl. ¶ 5. And with respect to the EU Action, the materials may support SBK's claim that Akin lobbied the EU Council, at Vujnovac's behest or as a result of his influence on Fortenova, to sanction SBK to facilitate the Corporate Changes. Second Lansky Decl. ¶ 20. As SBK explains, "the EU Council's apparent reliance on the Akin Opinion in making its initial determination, Akin's conclusions and how it reached them are clearly germane to any challenge to the basis for the EU Council's ruling." SBK Response at 5. These showings satisfy Section 1782's "for use" requirement. As the Second Circuit has explained, evidence is "for use" in a foreign proceeding if it can "be employed with some advantage or serve some use in [that] proceeding." *Mees*, 793 F.3d at 298; *see also, e.g., In re Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) ("[D]iscovery is 'for use' in a foreign proceeding if it is relevant to the subject matter of the proceeding, and the evidence would increase the applicant's chances of success in the proceeding." (citation omitted)); *In re DNG FZE*, No. 23 Misc. 435 (PAE), 2024 WL 124694, at *3 (S.D.N.Y. Jan. 11, 2024) ("§ 1782 applicant must establish a practical use in the foreign proceeding for the discovery it seeks.").

Second, Akin mischaracterizes SBK's Petition in arguing that, to challenge the EU Council's sanctions determination, SBK does not "need" documents in Akin's possession. Obj. at 18. In the foreign proceedings, SBK seeks to show not only that the EU Council erred in finding Sberbank's sale of SBK to Alketbi illegitimate. It also seeks to show that this error

12

derived, in part, from improper pressure exerted by Akin, at the behest of Vujnovac, to advance his scheme to seize control of Fortenova. Second Lansky Decl. ¶ 20; *see also* SBK Response at 6–8; Report at 3–6. Akin may hold communications tending to support these propositions that SBK and Fortenova do not possess. Akin may possess documents revealing what prompted it to draft the Akin Opinion. And Akin may possess documents that, although not shared with Fortenova or the EU Council, shaped its conclusions in the Akin Opinion and/or evince its methodology. As the Report rightly notes, it is "not impossible" to envision "non-privileged documents never seen by Fortenova Group that could provide evidence of a scheme that culminated in the Corporate Changes," Report at 20, and such documents could be "employed with some advantage" in the foreign proceeding, *Mees*, 739 F.3d at 298.

Third, Akin terms SBK's foreign litigation "frivolous." Akin Obj. at 1. It argues that the fact that SBK has initiated eight different proceedings abroad exposes the Petition as a "ruse for obtaining discovery" for use in foreign proceedings other than those mentioned in the Petition. *Id.* at 24–25. The record evidence, however, does not support that the foreign proceedings on which the Petition relies—the Malta Action, the EU Action, and the contemplated Netherlands Action—are "abusive," *id.* at 24. That additional foreign proceedings exist does not undermine that the evidence sought here is "for use"—and has a viable use—in the actions on which the Petition relies. And the record does not support that the Petition was brought in bad faith or is "meant to harass" Akin or Fortenova. *Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (placing onus on "'parties concerned . . . that a Section 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery' for use in other foreign proceedings" to "bring evidence of such chicanery to the . . . court's attention."); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d

13

1095, 1101 n.6 (2d Cir. 1995) ("[I]f the district court determines that a party's discovery application under section 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in toto, just as it can if discovery was sought in bad faith in domestic litigation.").

The Court thus rejects Akin's objection based on the statutory "for use" requirement.

**B.    Third *Intel* Factor: Attempt to Circumvent Foreign Laws or Policies**

Akin next objects to the Report's finding that the third *Intel* factor weighs in SBK's favor. This factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 264–65. Akin argues that the Report did not consider its arguments that (1) Maltese and Dutch attorney-client privilege law would prohibit the discovery sought by the Petition, and (2) UK and EU sanctions regimes would prohibit Akin from propounding discovery on SBK were this discovery requested in Malta or the EU. Dkt. 51. Akin mischaracterizes the Report, which rightly rejected these arguments.

First, contrary to Akin's slur that Judge Tarnofsky "improperly avoided an analysis of foreign proof-gathering restrictions," Akin. Obj. at 20, the Report did so. It thoroughly considered Akin's arguments (reprised here) as to foreign privilege and sanctions law. Thus, the Report considered, *inter alia*, the arguments that SBK "ha[d] already sought and been denied the requested discovery in foreign fora"; that SBK "would be unable to obtain any of the materials it requests in the foreign proceedings due to proof-gathering restrictions"; that SBK "is seeking discovery it is prohibited from receiving in the foreign fora"; and that EU law "could prohibit discovery of documents provided to the EU Council." Report at 31–36. The Report found these unsubstantiated, as reviewed below. *See id.* at 35; *see, e.g., Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022) ("[C]ircumvention occurs where the

applicant uses a § 1782 application to avoid measures that are intended to restrict certain means of gathering or using evidence."). That Akin's arguments failed does not support its false charge that they were ignored.

Second, Akin is mistaken that § 1782 requires the materials sought by the Petition to be discoverable under Malta and EU law. The Second Circuit has emphasized that "§ 1782 contains no foreign-discoverability requirement." *Mees*, 793 F.3d at 303. It does not require "that evidence sought in the United States . . . be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). Rather, § 1782's reference to "proof-gathering restrictions [is] best understood" as encompassing "rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Id.* at 303 n.20 (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80–81 (2d Cir. 2012)) (emphasis in original); *see also Euromepa*, 51 F.3d at 1101 ("[W]e do not think that the district court's concern for trespassing on the prerogatives of French sovereignty should have weighed so heavily in its decision. France can quite easily protect itself from the effects of any discovery order by the district court that inadvertently offended French practice.").

To the extent Akin faults the Report for not finding that the materials sought would necessarily be admissible in the Malta and EU actions, Akin misapprehends the governing standard. Just "as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application." *Brandi-Dohrn*, 673 F.3d at 82 (emphasis in original);

15

*Sampedro v. Silver Point Cap., L.P.*, 818 F. App'x 14, 17 (2d Cir. 2020) ("[O]ur precedents make clear[] [that] discovery need not be admissible to be for use in a litigation, as there is no statutory basis for such a requirement." (citation omitted)); *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019) (same); *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 (2d Cir. 2015) (similar). Moreover, as the Report recognized, to the extent Akin seeks to make discrete claims as to foreign privilege law, it may pursue these by including these in a privilege log identifying assertedly privileged subsets of the discovery. That some discovery sought may prove privileged does not support an outright denial of relief. *See Mees*, 793 F.3d at 302; *In re Lane*, No. 22 Misc. 34, 2022 WL 16737132, at *3–5 (S.D.N.Y. Nov. 7, 2022).[3]

Third, Akin has not substantiated its claim that the Petition attempts an end run around applicable sanctions law in the United Kingdom and the EU.[4] In support, Akin submitted a declaration by Ross Denton, senior counsel in the London office of Van Bael Bellis LLP. He opines about "the effect" of UK and EU sanctions laws on "potential compliance with a subpoena issued by . . . a sanctioned entity." Second Denton Decl. ¶ 2. Based on parallel language in EU and UK laws, Denton opined that:

> The application of EU (and UK) sanctions does not prevent a designated person from being able to benefit from any legal rights afforded to it, but simply that it would be unlawful under EU (and UK) law for any EU (or UK) person to provide that designated person with funds or economic resources. A designated person can clearly bring an action in a court, but any measure or remedy, particularly one

---

[3] Section 1782(a) protects privileged material from disclosure. It states: "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a).

[4] Sberbank has been sanctioned in the United Kingdom since April 2022. Denton Decl. ¶ 23. Akin's argument assumes that SBK is subject to the same designation as Sberbank, based on the EU Council's finding that it remains under Sberbank's effective control. *Id.* SBK disputes this assumption, but its argument does not depend on it. *See* Al-Karim Decl. ¶ 32.

16

involving transfer of funds or economic resources to that person, needs to be considered in the context of the sanctions.

*id.* ¶ 5; *see also* Denton Decl. ¶ 21. Denton, however, did not identify *any* authority holding that the prohibition on "transfer[ring] funds or economic resources" extends to providing discovery pursuant to a court order (much less a U.S. court order directed to Akin's U.S. office). Instead, his opinion surmises that "attorneys in Akin's UK office *could* face sanctions for providing 'economic resources' to SBK, because the clear intention of the [Petition] is to take material provided by Akin to assist in litigation that preserves or enhances SBK's commercial interests." Denton Decl. ¶ 25 (emphasis added); *see id.* at ¶ 34 (reasoning similarly as to EU sanctions). Denton's key assumption—that propounding discovery amounts to a "transfer of economic resources"—is, however, unsupported. And it is in tension with his representation that a sanctioned entity can "clearly bring an action in a court." Second Denton Decl. ¶ 5.

Denton's assumption is further undermined by legal authority identified in a declaration submitted by SBK's foreign-law expert, Ali Al-Karim, a barrister at Brick Court Chambers and a specialist in sanctions law. Al-Karim Decl. ¶¶ 1, 6–7. Al-Karim explains that, in *Mints v. PJSC Bank*, [2023] EWCA Civ 1132, the English Court of Appeal held that the prohibition on providing "funds and economic resources" to sanctioned entities does not apply to "normal judicial functions." Al-Karim Decl. ¶¶ 32–41; *see id.* ¶¶ 76–81 (EU law). Denton's declarations notably fail to engage with—they do not even mention—*Mints*. Akin's charge that SBK has engaged in bad-faith evasion of UK and EU law instead rests on supposition and *ipse dixit*.

In light of the above, the Report was clearly correct to find the weight of authority before the Court to favor approving discovery pursuant to § 1782:

> Respondents' experts speak in tentative terms about the possibility of sanctions violations because of laws against providing sanctioned entities with "funds and economic resources," while Petitioner's expert definitively takes the position,

17

which makes more sense, that sanctioned entities are entitled to seek and receive discovery to defend themselves.

Report at 36 (citing Denton Decl., Buttigieg Decl., Zijderveld Decl., and Al-Karim Decl.).[5] In other words, Akin has failed to substantiate its claim that EU and UK sanctions laws prohibit a sanctioned entity from "gathering or using evidence" to challenge the underlying sanctions determination. *See id.* ("Even Respondents do not appear to be saying that there is no way for them to produce the requested materials without a risk of sanctions—they seem to say that sanctions can be avoided if U.S. lawyers do the review and production . . . ."); *see also, e.g., In re Accent Delight*, 791 F. App'x at 251 ("Sotheby's has not provided any showing that the policy or restrictions of any relevant foreign jurisdiction prohibit the discovery sought by Petitioners."); *In re Hansainvest Hanseatische Inv. GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (Sullivan, J., sitting by designation) ("Respondents must illustrate not merely that the requested documents are not obtainable through German procedures, but that Applicants are engaged in a bad faith endeavor to misuse Section 1782."). *Compare Metallgesellschaft*, 121 F.3d at 80 ("[W]e will not speculate—particularly on the basis of an ambiguous affidavit submitted by [respondent's] German counsel—whether Hodapp enjoys a privilege under German law entitling him to refuse to comply with a discovery order under § 1782."), *with*

---

[5] Akin notes that the Report, in one instance, previewed its findings as to *Intel* factors two and three by noting a lack of "authoritative proof." *See* Report at 35; Akin Obj. at 19. It argues that the caselaw has generally employed this terminology to describe the respondent's burden of proof under factor two (but not factor three). Akin Obj. at 19–20. Even assuming *arguendo* that the respondent's burden were lower under factor three, that distinction is academic here, given the Report's bottom-line conclusion that there was no "proof"—authoritative or otherwise—"that providing discovery to Petitioner puts Respondents at risk of violating foreign sanctions law." Report at 36.

*Schmitz*, 376 F.3d at 82, 84 (application properly denied where German Ministry of Justice had asked district court to deny discovery, because it would "jeopardize" "the ongoing German criminal investigation" and "German sovereign rights").

Accordingly, Akin's objection based on the third *Intel* factor fails.

### C.    *Kiobel*'s Holdings as to Obtaining Discovery from Law Firms

Akin next argues that the Report's evaluation of the *Intel* factors "overlooked" or "misapplied" the Second Circuit's decision in *Kiobel*. Akin Obj. at 9 *et passim*. The Report found, expressly applying *Kiobel*, that (1) *Intel* factor one favors Akin, but (2) the concerns animating that decision do not apply to records generated in the course of Akin's lobbying—as opposing to lawyering—efforts on behalf of Fortenova. *See supra* pp. 9–10. Akin argues that the Report should have gone further, and categorically held that the fact "that the petitioner sought discovery from a client's legal counsel was enough to deny the petition." Akin Obj. at 14.

To the extent Akin construes *Kiobel* to work a blanket prohibition on obtaining discovery from the law firm of a foreign-litigation adversary, *see* Akin Obj. at 10–11, 14, Akin misreads *Kiobel*. The Second Circuit did not confront there a law firm which exercised a separate lobbying function on behalf of the client. And it did not paint with the broad brush that Akin imagines. Its decision instead followed from the circumstances of that case, which arose out of a multi-jurisdictional dispute spanning over a decade.

Esther Kiobel had initially sued Royal Dutch Shell ("Shell") in the United States under the Alien Tort Statute, 28 U.S.C. § 1350. *See Kiobel*, 895 F.3d at 240–41. The law firm Cravath Swaine & Moore ("Cravath") represented Shell in that litigation (the "ATS litigation"). *Id.* After the ATS litigation was dismissed, *see Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 114 (2013), Kiobel decided to sue Shell in the Netherlands. To assist in the contemplated Dutch

19

proceedings, Kiobel filed a § 1782 petition in this District, seeking documents of Shell in Cravath's hands. *See Kiobel*, 895 F.3d at 240–41. Cravath had custody of these documents because of its prior representation of Shell in connection with the ATS litigation. *Id.* It had previously produced those documents to Kiobel, but pursuant to a stipulated protective order that restricted their use to the U.S. litigation.[6] *Id.* at 241. The protective order required the parties to destroy or return each other's confidential material within 30 days after the respective cases' conclusions. *Id.* The documents were not discoverable from Shell in the Netherlands due to more restrictive Dutch discovery protocols. *See id.* at 246.

The district court granted Kiobel's § 1782 petition, finding it satisfied the statutory and discretionary factors. *See id.* at 242–43, 244–45. The protective order in the ATS litigation remained an obstacle, however, to Kiobel's use, in the contemplated Dutch proceedings, of the documents sought by the petition. The documents in Cravath's possession were designated as "confidential" and the protective order limited their use to the ATS litigation; its restrictions survived the ATS litigation. *Id.* at 241. As a work-around, the district court required the parties "to sign a new stipulation," under which the documents produced by Cravath could be used by Kiobel "for drafting court papers in the contemplated Dutch proceedings" but "not for publicity." *Id.* at 242. In the event Kiobel breached the new stipulation, Shell lacked the ability to enforce the confidentiality terms in the district court, because it was not a party in the § 1782 proceedings. *Id.* at 242–43.

The Second Circuit reversed. Its decision termed Kiobel's petition an "extraordinary, and possibly unique" gambit to use § 1782 to circumvent the protective order. *Id.* at 246–47. And, apart from that troubling feature of the petition, the Circuit held, the first and third *Intel* factors

---

[6] Kiobel signed the stipulated protective order. *See Kiobel*, 895 F.3d at 241.

weighed decisively against Kiobel's petition. The first factor disfavored Kiobel because "the real party" from whom documents were sought—Shell—was "involved in foreign proceedings" and "the need for § 1782 help is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 245 (citing *Schmitz*, 376 F.3d at 85). And the third *Intel* factor disfavored Kiobel's petition because "statements made by [her] counsel demonstrate[d] that Kiobel [wa]s trying to circumvent the Netherlands' more restrictive discovery practices." *Id.* Reiterating that the *Intel* factors are "not to be applied mechanically," the Circuit expressed, with force, its concern that Kiobel's petition aimed to end-run the protective order. *Id.* Because the documents sought by the petition were covered by the protective order and because there is "a strong presumption against the modification of a protective order," the Circuit held, the district court's "decision to alter the confidentiality order without Shell's participation, and without considering the costs of disclosure to Shell, ma[d]e this case *exceptional*, and mandate[d] reversal." *Id.* at 247 (emphasis added).

Thus, contrary to Akin's reading, *Kiobel* did not deny the petition merely because it sought discovery from the law firm of Kiobel's foreign-litigation adversary. And courts in this Circuit have not read or applied *Kiobel* to work a blanket prohibition on discovery from law firms. Rather, they have inquired, in a fact-sensitive manner, whether granting discovery would offend the legal system's interests in preserving the sanctity of protective orders and attorney-client relations, the concerns noted by the Circuit by *Kiobel*. In *In re Lane*, Judge Schofield granted a petition for discovery from a law firm where, as here, *Intel* factors two, three, and four favored production. No. 22 Misc. 0034, 2022 WL 16737132, at *3–5 (S.D.N.Y. Nov. 7, 2022). That the subpoena was directed to the law firm of petitioner's foreign-litigation adversary disfavored discovery under *Intel* factor one, but it was not dispositive. *See id.* at *3. On the

21

contrary, Judge Schofield noted, the concerns in *Kiobel* related to "restrictions on gathering evidence in the foreign proceeding and the existence of a protective order" were absent. *Id.* at \*4. And, she found, any "risk of turning over privileged materials" could be addressed "through privilege logs." *Id.* She thus held § 1782 discovery was appropriate. *Id.* at \*3–5. Similarly, *In re Degens* granted § 1782 discovery from U.S. law firms. No. 20 Misc. 237, 2020 WL 4252725, at \*1 (S.D.N.Y. July 24, 2020). There, in connection with a matrimonial dispute in Brazil, the petitioner had sought documents from law firms that had advised her former partner on the administration of his offshore assets. *Id.* at \*1. Emphasizing that "law firms are not immune from discovery," Magistrate Judge Lehrburger found that the business-related work that the law firms had performed did not implicate concerns regarding attorney-client privilege and attorney work product. *Id.* at \*6. For that reason, it accorded with *Kiobel* to authorize discovery.

In contrast, *In re Warren*'s fact pattern closely resembled that of *Kiobel* and warranted denying the § 1782 petition. *See* 20 Misc. 208, 2020 WL 6162214 (S.D.N.Y. Oct. 21, 2020). There, Judge Gardephe barred discovery from a law firm, which, as in *Kiobel*, had "c[o]me into possession of [the] documents solely as a result of its representation of [the client] in connection with" prior litigation, and the documents were subject to a protective order. *Id.* at \*10. For this reason, Judge Gardephe found *Kiobel* controlling: "[T]he primary concern that motivated the *Kiobel* court—that documents of a foreign entity would become discoverable under Section 1782(a) solely because they were produced by the foreign entity to its U.S. counsel in connection with U.S. litigation [wa]s present." *Id.* Other cases with similar facts have denied § 1782 discovery. *See, e.g., In re Alghanim*, No. 21 Misc. 167, 2022 WL 1423088, at \*3–5 (S.D.N.Y. May 5, 2022) (Swain, C.J.) (denying discovery from law firm where petition had "every

22

indication of being an archetypal fishing expedition" and *Intel* factors one, three, four, and *Kiobel*'s policy concerns weighed against production); *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 351–54 (S.D.N.Y. 2019) (Gorenstein, M.J.) (denying petition after finding that "inexcusabl[e]" delay on petitioners' part, along with *Intel* factor four, disfavored discovery from law firm).

Akin is thus wrong to argue that *Kiobel* requires an outright denial of the Petition merely because Akin represented Fortenova, in part, as a law firm. *Kiobel* did not so hold. And Akin's attempt to read *Kiobel* to shield from § 1782 discovery its separate lobbying function, which is akin to the business-advisory function of the firm in *In re Degens* as to which discovery was held appropriate, does not follow from any aspect of that decision.

For three reasons, the Court holds, *Kiobel* is inapposite, and does not provide a basis for Akin's objection to the targeted discovery into lobbying services authorized by the Report.

First, authorizing discovery from Akin would not work an end run around a protective order—a central concern animating *Kiobel*. Because the documents that Cravath held were subject to a protective order, the Second Circuit stated, "[t]he decision to alter the confidentiality order without Shell's participation, and without considering the costs of disclosure to Shell, *makes this case exceptional*, and mandates reversal." *Kiobel*, 895 F.3d at 247 (emphasis added); *see id.* ("Without protective orders, 'litigants would be subject to needless annoyance, embarrassment, oppression, or undue burden or expense.'" (quoting *SEC v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001))). "Overrid[ing] the confidentiality order," the Circuit held, would imperil "full and frank communication between attorneys and their clients,' which 'promote[s] broader public interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). In contrast, the documents whose

23

production the Report would authorize are not covered by a protective order. The Petition thus does not implicate *Kiobel*'s concern that "overrid[ing]" protective orders to facilitate § 1782 discovery would inhibit "foreign companies . . . from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery," *id.*

Second, the Petition here, unlike that in *Kiobel*, does not seek from a law firm internal corporate documents of its client that are "in counsel's hands solely because they were sent to the United States for the purpose of American litigation." *Id.* at 241. To the contrary, the Petition does not seek *any* documents prepared for U.S. litigation. Rather, as noted, discovery here, as the Report importantly narrows it, would be limited to documents independently created by Akin as a lobbying agent of Fortenova. *See In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, No. 23 Misc. 208, 2024 WL 555780, at *10 (S.D.N.Y. Jan. 18, 2024) (distinguishing between subpoenaed party's "own business records" and records of the party before the foreign court proceeding); *In re Batbold*, No. 21 Misc. 218, 2023 WL 2088524, at *5 & n.1 (S.D.N.Y. Feb. 17, 2023) (collecting cases). Akin's attempt to analogize the Akin Opinion—a lobbying document allegedly intended to sway outside opinion—to the confidential corporate documents in *Kiobel* is highly unpersuasive. Fortenova affirmatively used the Akin Opinion as a sword in proceedings before the EU Council. The EU Council relied upon it as a basis to impose sanctions on SBK. In contrast, the documents sought in *Kiobel* were not used offensively, but in Cravath's hands solely because it represented Shell in prior U.S. litigation. As the Report recognized, Fortenova's "public use of the Akin Opinion means that the work relating to the Akin Opinion and Mr. Alketbi's acquisition of [SBK] becomes something more like the discoverable work of a lawyer acting as a lobbyist or business advisor." Report at 46–

24

57. And Akin has not substantiated its claim that the Petition interferes with the lawyer-client relationship. Given the important limits that the Report would place on discovery, which restrict discovery of non-publicly-disclosed materials to materials arising from lobbying work, and given §1782(a)'s preservation of legally applicable privileges, there is no discernible basis for that objection.[7]

Third, even assuming *arguendo* that the Petition implicated *Kiobel*'s policy concern that discovery from law firms would chill attorney-client communications, the thoughtful discovery limitations that the Report recommends ably address that concern. Critically, it limits document discovery to "non-privileged" materials that are "uniquely possessed by Akin or that have been shared with third parties other than Fortenova Group." *Id.* And it limits such materials to those implicating topics closely tailored to SBK's litigation needs: (1) Alketbi's acquisition of SBK; (2) the Akin Opinion; and (3) the Corporate Changes. Likewise, with respect to the Petition's request for testimony from Akin, the Report limits it to a single deposition on these topics and Akin's production. Temporally, too, the scope of discovery is narrow, from February 1, 2022 to December 31, 2023—to wit, from shortly before Alketbi's acquisition of SBK to shortly after the Corporate Changes. These parameters together focus discovery on non-privileged, publicly shared lobbying material. With these limitations, the discovery at issue ought not implicate the policy concerns that *Kiobel* found to counsel restraint.

---

[7] To the extent that Akin represented at argument before Judge Tarnofsky that some responsive documents may be covered by the attorney-client privilege, Akin's remedy is to prepare a log that enumerates, on a document-specific basis, its privilege claims. *See United States v. Constr. Prods. Rsch., Inc.,* 73 F.3d 464, 473 (2d Cir. 1996) ("To facilitate its determination of privilege, a court may require an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." (citation omitted)).

Important, too, as to this discretionary factor, Akin remains at liberty to file non-frivolous overbreadth objections to particular subpoena calls. To the extent a particular demand might be indelicately formulated, such would permit further tailoring on a request-specific basis. *See, e.g., In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, No. 24 Misc. 348, 2025 WL 40783, at \*4 (S.D.N.Y. Jan. 7, 2025) ("[S]ubpoenas are not so incurably broad and burdensome that they must be quashed outright."); *Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018) (similar); *cf. In re Chevron Corp.*, 749 F. Supp. 2d 141, 166–68 (2010) ("[W]ell-established procedure for the invocation of alleged privileges in response to subpoenas and other demands for tangible evidence" is "to allow the process to go forward and to adjudicate the claims of privilege in due course."). The Report recognized this avenue of relief, noting the parties' ability, subject to judicial supervision, to modulate the burdens generated by specific requests. In this respect, Akin is wrong to assert that the Report "overlooked the importance of *Kiobel* in [its] analysis of the fourth *Intel* factor." Akin Obj. at 16. To the extent Akin voices concern about the volume of materials to be reviewed for responsiveness, the Court, as with all civil discovery, expects the parties to negotiate search terms that would avoid excessive burdens on producing party. *See In re Accent Delight Int'l*

*Ltd.*, No. 16 Misc. 125, 2018 WL 2849724, at *5 (S.D.N.Y. June 11, 2018) (authorizing the

same), *aff'd*, 791 F. App'x 247 (2d Cir. 2019).[8]

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and rejects Akin's objections to

the Report. The Court accordingly grants the Petition in part and denies it in part.

---

[8] Insofar as Akin, in seeking wholesale denial of the Petition, claims that the Report overlooked the overall burden presented by the narrowed discovery it authorized, the Report heeded the governing standards. To "assess whether the discovery sought is overbroad or unduly burdensome," a court must "apply[] the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. "[W]hether a request is intrusive or burdensome should not be assessed based on the 'discovery scope' available in the foreign proceeding." *Id.* Rule 26(b)(1) provides that the scope of discovery is limited to "relevant" material that is "proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit," among other factors. *Elvis Presley Enters.*, 2016 WL 843380, at *5. "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016). "[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101.

The Report here, sensitive to Akin's burden claims, applied those standards. It significantly limited the requested discovery, and found that the burden presented the approved discovery justified by the needs of SBK's foreign litigation, which, aims to recoup approximately 500 million euros in losses alleged suffered by SBK as a result of the Corporate Changes. *Compare In re BM Brazil 1 Fundo de*, No. 23 Misc. 208, 2024 WL 555780, at *17 (that production would require a "labor-intensive search of thousands of documents some of which may have to be redacted" was insufficient to demonstrate undue burden), *and In re Rodriguez Guillen*, 20 Misc. 102, 2020 WL 3497002, at *3 (S.D.N.Y. June 29, 2020), *with In re Petition of MT "BALTIC SOUL" Produktentankschiffahrtsgesellschaft mgH & Co. KG*, No. 15 Misc. 319 , 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) ("[T]he only potentially appropriate discovery purpose Petitioners have identified is adjudication of the issue of the affiliates' alter ego status. Their request for disclosure of every financial transaction these companies have engaged in with 11 different banks, along with considerable additional financial information, sweeps far too broadly to be proper for that limited purpose."), *and In re Ex Parte Application of Apotex Inc. for Order to Obtain Discovery for Use in Action Pending Before the Federal Court in Canada*, No. M-12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (denying petition that would have required respondent "to devote substantial resources to perform onerous searches and then review voluminous documents for a potentially small subset of . . . documents that date back nearly thirty years").

27

The Clerk of Court is respectfully directed to terminate all pending motions and to close this case, subject to the right of the parties to seek to reopen it for the limited purpose of seeking judicial resolution of discrete discovery disputes (*e.g.*, privilege objections).

SO ORDERED.

_Paul A. Engelmayer_

PAUL A. ENGELMAYER
United States District Judge

Dated: May 30, 2025
   New York, New York

# ATTACHMENT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE EX PARTE APPLICATION OF SBK ART
LLC, Petitioner,
for an Order Pursuant to 28 U.S.C. § 1782
To Take Discovery for Use in Foreign
Proceedings.

CIVIL ACTION NO. 24-MC-0147 (PAE) (RFT)

**REPORT AND RECOMMENDATION**

---

**TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE:**

On March 26, 2024, SBK ART LLC ("Petitioner") submitted an ex parte Application and

Petition (the "Application") pursuant to 28 U.S.C. § 1782 for an order authorizing Petitioner to

serve subpoenas on Akin Gump Strauss Hauer & Feld LLP and Akin Gump LLP (together,

Respondents or "Akin") to obtain discovery for use in: (1) a pending lawsuit filed in the Civil

Court of Malta (the "Malta Action"), (2) anticipated litigation in the Netherlands (the

"Anticipated Litigation"), and (3) a pending action in front of the General Court for the

European Union (the "EU Action") (together, the "Foreign Proceedings"). (*See* ECF 1, Petition;

ECF 8, Motion.) Having reviewed Petitioner's and Respondents' submissions, for the reasons set

forth below, I respectfully recommend that the Application be GRANTED, with the proposed

subpoenas revised as set forth herein;[1] to the extent that, upon undertaking the document

---

[1]      "Until recently, the consensus view in this District was that 'rulings on § 1782
applications are not dispositive,' and therefore that such an application could be disposed by
order of the Magistrate Judge to whom it was referred . . . ." *In re Libyan Asset Recovery and
Mgmt. Office*, No. 21 Misc. 0852 (JGK) (BCM), 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16,
2023) (quoting *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)). However, in
*Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-2865, 2023 WL
3166357 (2d Cir. Mar. 28, 2023), a panel of the Second Circuit decided that it lacked jurisdiction
to review the order issued by a Magistrate Judge denying an application under Section 1782
and remanded so that the order could be "treated as a report and recommendation." 2023 WL
3166357, at *1. While the Second Circuit did not explain its reasoning, the theory would be that

1

production, Akin concludes that compliance would be overly burdensome, it may come back to the Court after engaging in a meet-and-confer process.

## BACKGROUND

**I.      Factual Background**

Fortenova Grupa d.d. ("Grupa"), a Croatian food and retail company, is held by a series of Dutch holding companies (the "Fortenova Group"), with Fortenova Group STAK Stichting ("STAK") at the top of the corporate structure. (*See* ECF 3, Michael A. Piazza Declaration ("Piazza Decl.") Ex. B (Fortenova Group Structure).) Petitioner claims it is the rightful owner of an approximately 42% interest in Grupa through Petitioner's ownership of depositary receipts issued by STAK ("STAK DRs"). (*See id.*)

Petitioner acquired its STAK DRs in April 2022 from the Russian bank PJSC Sberbank of Russia ("Sberbank"), which was the majority owner of Petitioner at the time. (*See* ECF 3, Piazza Decl. Ex. D (Article).) After the beginning of the war in Ukraine, Sberbank was sanctioned by the United States, the United Kingdom, and the European Union ("EU"). Thereafter, Sberbank sold its stake in Petitioner to Saif J.S.M. Alketbi ("Mr. Alketbi"), a businessman from the United Arab Emirates. (*See* ECF 13, Unredacted Versions of Proposed Sealed Documents in Support of Application (Ex. 1, Petitioner's Mem. at 5).)

The second largest minority owner of Grupa is a Maltese company, Open Pass Limited ("Open Pass") (*see* ECF 3, Piazza Decl. Ex. B (Fortenova Group Structure)), which is controlled by

_____

the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may proceed is dispositive. I therefore make a report and recommendation on the Application rather than issuing an opinion and order.

2

Mr. Pavao Vujnovac ("Mr. Vujnovac"). (*See* ECF 13 Ex. 1, Petitioner's Mem. at 2.) Starting in 2019, Mr. Vujnovac began acquiring STAK DRs, which Petitioner says was part of a plan to gain control of Grupa; in 2021, he established Open Pass and transferred into it all or most of the STAK DRs he owned at the time. (*See id.* at 6-7.) Petitioner asserts that Mr. Vujnovac used the sanctions against Sberbank to advance his plan to gain control of Grupa. (*See id.*)

Akin is "an American multinational law firm with offices throughout the US and across the globe." (ECF 22, Respondents' Opp. at 4.) In recent years, Akin's London office has been lead English law counsel to Fortenova Group on most of its matters, "including (since 2022) in connection with issues arising from the presence of sanctioned holders in its capital structure." (ECF 23, Declaration of Liz Osborne in Opposition to Petition ("Osborne Decl.") ¶ 6.) In addition to serving as Fortenova Group's English law legal counsel, Akin is also a registered lobbyist for Fortenova Group and has done some work lobbying in the U.S. for Fortenova Group. (*See* ECF 41, Second Declaration of Robert Pees in Opposition ("Second Pees Decl.") ¶¶ 12-13.)

Petitioner contends that after its sale to Mr. Alketbi, Open Pass began a smear campaign against him while at the same time encouraging Croatian officials to lobby EU officials to have Petitioner sanctioned in the EU. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 6-8.) In particular, Petitioner claims that on December 14, 2022, it received documents that STAK had provided to a Dutch court to contest Petitioner's right to exercise its voting rights in STAK. (*See id.*) Those documents included an opinion issued by Akin (the "Akin Opinion") stating that documents provided by Mr. Alketbi explaining his acquisition of Petitioner were: "insufficient to confirm that the transaction under review [has] resulted in SBK [ART] no longer being subject to the asset freeze restrictions imposed on its purported (former) parent company Sberbank"; and

"indicative of criminal sanctions breaches having been committed by EU persons in relation to the transaction under review." (*Id.* at 7.) The Akin Opinion listed documents necessary to analyze Mr. Alketbi's acquisition of Petitioner. The listed documents had already been requested by STAK from Mr. Alketbi, which leads Petitioner to conclude that Akin was advising STAK in connection with STAK's review of Mr. Alketbi's acquisition of Petitioner and that STAK had instructed Akin to "assist in a plan to deny Mr. Alketbi his voting and ownership rights." (*Id.*) On December 16, 2022, Petitioner was added to the EU list of sanctioned entities. (*See id*. at 7-8.)

Petitioner believes that Respondents lobbied the EU Council to sanction Petitioner. (*See* ECF 42, Petitioner's Response ("The petition, at its core, seeks records relating to Akin's work done in connection with coming to the conclusions in the Akin Opinion, and its efforts to advocate on behalf of Fortenova (and regarding SBK ART) before . . . the EU Council.").) And it appears that the EU Council somehow obtained a copy of the Akin Opinion. (*See Id.* at 2 (stating that the EU Council turned over a copy of the Akin Opinion in connection with discovery in the EU Action).) According to Petitioner: "Taking into account the short period of time between the issuance of the Akin Opinion (14 December 2022) and the date of introduction of sanctions against SBK ART on the basis, among other things, of the Akin Opinion (16 December 2022), the Akin Opinion could have ended up with the Council of the EU only through the Fortenova Group's management." (ECF 13 Ex. 1, Petitioner's Mem. at 8.)

On January 12, 2023, STAK held a meeting of the STAK DR Holders about the proposed changes to the corporate governance of the Fortenova Group ("Corporate Changes"), which were approved based on Open Pass's votes in favor; Petitioner, as a sanctioned entity, was not

permitted to vote, and two-thirds of the remaining STAK DR Holders (other than Open Pass)

voted against the Corporate Changes. (*See id.* at 9; ECF 13 Ex. 4, Action for Annulment ¶ 74.)

Having secured control of Grupa as a result of the Corporate Changes, Open Pass then

arranged for the sale of the Dutch holding company, Fortenova Group MidCo B.CV. ("MidCo"),

which indirectly held all of Grupa's shares, at an artificially low price, to benefit Open Pass and

harm Grupa's other owners, including Petitioner. (*See* ECF 3, Piazza Decl. Ex. G (Article); ECF 13

Ex. 1, Petitioner's Mem. at 9-12.)

## II.    Procedural History

On March 26, 2024, Petitioner submitted its Application pursuant to 28 U.S.C. § 1782 for

an order authorizing Petitioner to serve subpoenas on Akin for use in the Foreign Proceedings.

(*See* ECF 8, Motion; ECF 13 Ex. 1, Petitioner's Mem.; ECF 3, Piazza Decl.; ECF 13 Ex. 3,

Declaration of Dr. Gabriel Lansky in Support ("Lansky Decl."); ECF 5, Declaration of John Refalo

in Support ("Refalo Decl.").)[2] The previous day, Petitioner had submitted an application seeking

discovery from Kroll LLC ("Kroll") (the "Kroll Application"), which matter was referred to me for

general pretrial supervision and dispositive motions. On April 3, 2024, the Court referred this

matter to me for general pretrial supervision and dispositive motions as well. (*See* ECF 14,

Order.)

---

[2]     Petitioner's Memorandum of Law and Exhibit 1 thereto (ECF 6) and the Lansky Declaration and Exhibit 2 thereto (ECF 4) were filed in redacted form. Petitioner filed a motion to seal on March 28, 2024 along with unredacted versions of the proposed sealed documents. (*See* ECF 11, Mot. To Seal; ECF 12, Mem. in Support of Mot. To Seal; ECF 13, Unredacted Versions of Proposed Sealed Documents in Support of Application.) On April 18, 2024, I granted Petitioner's motion to seal. (*See* ECF 16, Order.)

On April 18, 2024, I ordered Petitioner to serve Akin with the Application and supporting papers and set deadlines for Akin's response to the Application, if any, and for Petitioner's reply, if any. (*See* ECF 17, Order.) On April 22, 2024, this case was accepted as related to the Kroll Application.

On May 5, 2024, after having been informed by Petitioner on April 15, 2024 that "Kroll will not oppose the issuance of the subpoena under 28 U.S.C. § 1782 but reserves its right to object to the resulting subpoena under any grounds available and appropriate under Fed. R. Civ. P. 45," *See In Re: SBK ART LLC,* No. 24-MC-0142 (PAE) (RFT), ECF 11, Letter at 1 n.1, I issued a report and recommendation on the Kroll Application, recommending that Petitioner's application to take discovery from Kroll be granted.[3]

On May 6, 2024, Akin filed a response in opposition to the Application with supporting papers. (*See* ECF 22, Respondents' Opp.; ECF 23, Osborne Decl.; ECF 24, Declaration of Ross Denton in Opposition ("Denton Decl."); ECF 25, Declaration of Daniel Buttigieg in Opposition ("Buttigieg Decl."); ECF 26, Declaration of Christiaan Zijderveld in Opposition ("Zijderveld Decl."); ECF 27, Declaration of Robert Pees in Opposition ("Pees Decl.").)

On May 31, 2024, Petitioner filed under seal its reply in further support of the Application. (*See* ECF 33, Petitioner's Reply; ECF 33-1, Declaration of Robert S. Landy in Further Support ("Landy Decl."); ECF 33, Petitioner's Reply Ex. 1, Second Declaration of Dr. Gabriel Lansky in Support with Exhibit ("Second Lansky Decl."); ECF 33, Petitioner's Reply Ex. 2,

---

[3]    On May 17, 2024, Kroll filed a request for an extension of time to file objections to my report and recommendation until after a decision on the Application in this action. *See In Re: SBK ART LLC,* No. 24-MC-0142 (PAE) (RFT), ECF 18, Letter Mot. That request was granted. *See In Re: SBK ART LLC,* No. 24-MC-0142 (PAE) (RFT), ECF 20.

Declaration of Ali Al-Karim in Support ("Al-Karim Decl."); ECF 33, Petitioner's Reply Ex. 3, Declaration of Elbert Jan Hendrik Zandbergen ("Zandbergen Decl."); ECF 33, Petitioner's Reply Ex. 4, Second Declaration of John Refalo ("Second Refalo Decl.").)[4]

On July 1, 2024 and July 8, 2024, I issued orders requesting further briefing on certain topics. (*See* ECF 35, 7/1/2024 Order; ECF 36, 7/8/2024 Order.) Petitioner made a supplemental filing on July 11, 2024 (*see* ECF 37, Petitioner's Response, attaching Second Declaration of Robert S. Landy ("Second Landy Decl.") and Third Declaration of Dr. Gabriel Lansky ("Third Lansky Decl.")); Respondents filed their supplemental response on July 17, 2024 (*see* ECF 38, Respondents' Response; ECF 39, Second Declaration of Ross Denton ("Second Denton Decl."); ECF 40, Declaration of Richard Hornshaw ("Hornshaw Decl."); ECF 41, Second Pees Decl.). Petitioner filed a supplemental response on July 19, 2024 (*see* ECF 42, Petitioner's Supp. Response).[5] I held oral argument on July 23, 2024.

## III.    The Application

Petitioner seeks discovery – documents and depositions – from Akin in connection with three matters: (1) the Malta Action, which is a suit by Petitioner against Open Pass and Fortenova Group for damages caused to Petitioner by the approval of the Corporate Changes; (2) the Anticipated Litigation, which is a claim that Petitioner intends to file in the Netherlands or another foreign court outside the United States to seek damages caused by the MidCo Sale;

---

[4]    Petitioner also filed an unsealed redacted version of the sealed filing. (*See* ECF 34, Reply; ECF 34-1, Landy Decl.; ECF 34 Ex. 1, Second Lansky Decl.; ECF 34 Ex. 2, Al-Karim Decl.; ECF 34 Ex. 3, Zandbergen Decl.; ECF 34 Ex. 4, Second Refalo Decl.)

[5]    A redacted version of Respondents' Response (ECF 42) was filed at ECF 43.

and (3) the EU Action, in which Petitioner is seeking to annul the EU Council's decision to list Petitioner as a sanctioned entity. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 2-3.)

Petitioner seeks production of non-privileged documents on the following topics, dating from January 1, 2019 through the present: (1) Mr. Alketbi's acquisition of Petitioner, the Corporate Changes, and Mr. Vujnovac's ownership and/or control over the Fortenova Group, including but not limited to communications about those topics between Akin and a list of enumerated individuals and entities; (2) Akin's lobbying efforts on behalf of the Fortenova Group in the United States, the United Kingdom, or the EU; and (3) communications between Akin and the U.S. Department of Treasury's Office of Foreign Assets Control, the U.S. State Department, the Dutch Ministry of Finance, the U.K. Office of Financial Sanctions Implementation, the National Bank of Serbia, Croatian government officials and staff, and EU officials and staff. (*See* ECF 3, Piazza Decl. Ex. H (Proposed Document Subpoena) at 2, 11-13.)

Petitioner seeks testimony from Akin about: (1) its role and responsibilities in analyzing Mr. Alketbi's acquisition of Petitioner; (2) its role, responsibilities, and lobbying efforts on behalf of the Fortenova Group in the United States, the United Kingdom, the EU, or before any other relevant authority, including the U.S. Department of Treasury's Office of Foreign Assets Control, the U.S. State Department, the Dutch Ministry of Finance, the U.K. Office of Financial Sanctions Implementation, the National Bank of Serbia, Croatian government officials and staff, and EU officials and staff; (3) the support for its conclusion in the Akin Opinion that Sberbank effectively controls Petitioner; (4) other information related to the Akin Opinion; (5) information provided to Akin concerning Mr. Alketbi's acquisition of Petitioner, the Corporate Changes, and Mr. Vujnovac's ownership and/or control over the Fortenova Group; (6)

communications between Akin and a list of enumerated individuals and entities concerning Mr. Alketbi's acquisition of Petitioner, the Corporate Changes, and Mr. Vujnovac's ownership and/or control over the Fortenova Group; and (7) Akin's document production. (*See* ECF 3, Piazza Decl. Ex. H (Proposed Deposition Subpoena) at 7-10.)

Petitioner argues that the requested discovery will provide evidence of a "scheme that culminated in the sham transaction approved on December 19, 2023, stripping SBK ART of its Fortenova Group ownership interests" and "of lobbying efforts taken by or on behalf of Fortenova Group to preclude SBK ART from exercising their DR voting rights," which issues will be adjudicated in the Foreign Proceedings. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 18.)

## DISCUSSION

### I.    Legal Standard

Under 28 U.S.C. § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." Under the statute, the party making the application must show that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (alterations, internal quotation marks, and citations omitted)).

When the statutory requirements are met, the court is "free to grant discovery in its discretion." *In re Optimal Inv. Servs., S.A.,* 773 F.3d 456, 460 (2d Cir. 2014). Although that

9

discretion is broad, it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (internal quotation marks and citations omitted).

The Supreme Court has identified four discretionary factors (the "*Intel* Factors") that a court considers when ruling on a Section 1782 application: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Id*. at 97-98 (citing *Mees*, 793 F.3d at 298 and *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

The fourth *Intel* Factor – whether the request is "unduly intrusive or burdensome" – is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, No. 15-MC-0205 (LGS), 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing *Mees*, 793 F.3d at 303). As applied to Section 1782 applications, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-MC-0132 (RA) (KHP) ("*Correios*"),

10

2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), *remanded on other grounds*, 2023 WL 3166357 (2d Cir. Mar. 28, 2023). The "proportionality analysis depends on the relevance of the information sought – and, in the case of a § 1782 petition, relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).

The Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302 (internal quotation marks and citation omitted). Thus, where the court finds that discovery sought under Section 1782 is overbroad, "before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." *Id.*; *see also In re Fed. Republic of Nigeria*, No. 21-MC-0007 (JGK) (VF), 2022 WL 4234556, at *6 (S.D.N.Y. Sept. 14, 2022).

II.     **Analysis**

A.      The Statutory Requirements Are Met

Petitioner argues that it has met the Section 1782 statutory requirements. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 14-16.) Respondents contend that the "Petition suffers from multiple infirmities, but the requirement that any discovery sought pursuant to Section 1782 must be 'for use' in a foreign proceeding is an essential element SBK cannot satisfy." (ECF 22, Respondents' Opp. at 10.)  For the reasons set forth below, I agree with Petitioner that the statutory requirements are met.

1. Akin Is Found in this District

Respondents do not appear to contest that Akin is found in this District. And in filings with the New York Secretary of State, both Akin Gump Strauss Hauer & Feld LLP and Akin Gump LLP are registered limited liability partnerships in the State of New York, and Akin Gump LLP has its principal business office listed as being in Manhattan (*See* ECF 3, Piazza Decl. Ex. I, New York Department of State Entity Information.) Thus, Akin resides in the Southern District of New York for purposes of Section 1782 and the first statutory requirement is satisfied. *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("[T]he place of incorporation and principal place of business are paradigmatic . . . bases for general jurisdiction."); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018) (holding that a corporation that maintained its principal place of business within the district satisfied the statutory "resides or is found" within district requirement for discovery order), *aff'd*, 939 F.3d 520 (2d Cir. 2019).

2. The Discovery Sought Is for Use in a Foreign Proceeding

Petitioner states that it seeks the contemplated discovery for use in (1) the Malta Action against Open Pass and Fortenova Group for damages caused by the approval of the Corporate Changes, (2) in the Anticipated Litigation to seek damages caused by the MidCo Sale, and (3) in the EU Action challenging Petitioner's status as a sanctioned entity. (*See* ECF 13 Ex. 1, Petitioner's Mem. at 2-3, 18.) Petitioner argues that the Foreign Proceedings are the types of proceedings contemplated by Section 1782 and that the discovery sought is relevant to those actions. (*See id.* at 17-19.)

Respondents counter that the Malta Action is likely to be dismissed in the near future, just as a similar claim by Petitioner in Malta was dismissed in April 2024, and that the

12

Anticipated Litigation is not "reasonably contemplated" as required under the caselaw interpreting Section 1782. (*See* ECF 22, Respondents' Opp. at 10-14.) Respondents also argue that the discovery sought does not satisfy the requirement of being "for use" in a foreign proceeding, because Petitioner has not demonstrated that such discovery would increase the likelihood of success in the Malta Action or the EU Action. (*See id*. at 12-13.)

*a.   There Are Qualifying Foreign Proceedings*

In analyzing whether discovery being sought under Section 1782 is "for use in a proceeding before a foreign tribunal," courts look to whether "there actually is a foreign proceeding," *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd*., No. 14-CV-9997(CM), 2015 WL 3439220, at *4 (S.D.N.Y Feb 5, 2015) (citing *Intel*, 542 U.S. 241 at 259), as well as "whether [the] foreign proceeding is adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). There actually is a foreign proceeding if a foreign proceeding is pending or "reasonably contemplated." *Jiangsu Steamship Co.,* 2015 WL 3439220, at *4 (citing *Intel*, 542 U.S. 241 at 259). Here, two of the Foreign Proceedings – the Malta Action and the EU Action – are currently pending (*see* ECF 5, Refalo Decl. ¶ 1; ECF 13 Ex. 3, Lansky Decl. ¶¶ 8-10, 16-17; ECF 33, Petitioner's Reply Ex. 1, Second Lansky Decl. ¶¶ 11-14), which satisfies the first requirement. While Respondents may be correct that the Malta Action is likely to be dismissed in the near future, until that happens, the Malta Action is an appropriate predicate for a grant of discovery under Section 1782. *See In re Children's Investment Fund Foundation (UK)*, 363 F. Supp. 3d 361, 377 (S.D.N.Y. 2019) (declining to "engage in speculation about how any of the

Foreign Proceedings may be resolved" and stay the 1782 petition based on the respondent's claim that the foreign proceedings were "likely to be dismissed").[6]

Respondents do not appear to contest that the Malta Action and the EU Action are adjudicative in nature. (*See* ECF 22, Respondent's Opp. at 10.) I believe that the Malta Action is adjudicative in nature, in that it asks the court in Malta to (1) declare that the defendants in that case abused their rights as STAK DR Holders and caused damage to Petitioner and (2) order the defendants to pay damages to Petitioner. (*See* ECF 5, Refalo Decl. Ex. 1 at 34.) And I believe that the EU Action is also adjudicative, because it asks for a determination that Petitioner should not be a sanctioned entity. (*See* ECF 33, Petitioner's Reply Ex. 1, Second Lansky Decl. ¶ 7.) Accordingly, the Malta Action and the EU Action qualify as foreign proceedings for purposes of Section 1782.

It is not clear that the Anticipated Litigation would be sufficient standing alone to satisfy the requirement that there is an "identifiable foreign proceeding" that is "reasonably contemplated." *Jiangsu Steamship Co.*, 2015 WL 3439220, at *4 (citing *Intel*, 542 U.S. at 259) (noting that a foreign proceeding need not be pending or imminent but must be "within reasonable contemplation"). However, Petitioner is seeking the same discovery for use in the Anticipated Litigation as it seeks in the Malta Action and the EU Action (*see* ECF 5, Refalo Decl. ¶ 5; ECF 13 Ex. 3, Lansky Decl. ¶¶ 13-15), and since the pendency of the Malta Action and the

---

[6]     Respondents suggest that the Court should "hold" its decision until some unspecified time in the future when the Maltese court decides whether to dismiss the Malta Action as vexatious (*see* ECF 22, Respondents' Opp. at 14), but they provide no case law supporting that outcome, and I have been unable to locate any. I therefore see no basis for recommending that Your Honor delay a decision on the Petition.

14

EU Action satisfies the requirement of a foreign proceeding, I need not address whether the Anticipated Litigation would also satisfy the requirement.

### b.  Discovery "for Use" in a Foreign Proceeding

The statutory "for use" factor requires a showing that the requested discovery is "relevant to the subject matter of the [foreign] proceeding, and the evidence would 'increase the applicant's chances of success' in the proceeding." *In re Asia Mar. Pac., Ltd*., 253 F. Supp. 3d 701, 706 (S.D.N.Y. Aug. 26, 2015) (quoting *Mees*, 793 F.3d at 299). Rule 26(b) of the Federal Rules of Civil Procedure requires that information sought through discovery be relevant to a claim or defense. Thus, an applicant's discovery requests should be "tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Athene Holding Ltd. v. Dang*, No. 23-MC-0171 (JHR) (SLC), 2023 WL 5348950, at *3 (S.D.N.Y. Aug. 21, 2023) (internal quotation marks and citation omitted). Additionally, however, as explained by the Second Circuit, because Congress "adopt[ed] the phrase 'for use,'" it "plainly meant to require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). As a result, courts addressing requests for discovery under Section 1782 must determine whether the applicant "will actually be able to *use* the information in the proceeding." *Id.* (internal quotation marks and citation omitted).

### i.  The Parties' Arguments

Respondents argue that the discovery sought by Petitioner does not meet the statutory for use requirement because "much of the discovery SBK seeks is either privileged or already

possessed by" Fortenova Group or the EU Council, which are SBK's "true adversaries." (ECF 22, Respondents' Opp. at 12-13.) Respondents conclude that Section 1782 is an inappropriate mechanism for obtaining such discovery, because Section 1782 does not contemplate seeking discovery of materials that already are possessed by the adversaries of the party seeking discovery; Respondents also state that Section 1782 does not permit discovery of privileged materials. (*See id*.) Respondents posit that the only remaining categories of requested discovery would be non-privileged materials either "uniquely possessed by Akin" or shared only "with third parties other than" Fortenova Group and the EU Council; Respondents assert that Petitioner has failed to offer an explanation of the relevance of any such materials, which Respondents say are by definition irrelevant to the Malta Action, because Fortenova Group "could not have been influenced in any way by documents that" it never saw, and to the EU Action, because the EU Council likewise could not have been influenced by documents it did not see. (*Id.*) Respondents also contest Petitioner's contention that Akin did significant work for Fortenova Group as a lobbyist: according to Respondents, "Akin was retained by Fortenova as its legal counsel, and nearly all the work Akin has done for Fortenova has been in that capacity." (ECF 38, Respondents' Response at 7; ECF 41, Second Pees Decl. ¶¶ 10-13.)

Petitioner makes clear that it seeks documents beyond those "uniquely possessed by Akin" and/or documents that were "shared with third parties other than" Fortenova Group and the EU Council: Petitioner also seeks "communications directly or indirectly with Fortenova regarding Akin's investigative work." (ECF 37, Petitioner's Response at 7.) Petitioner argues that such documents, if not privileged, are subject to discovery through the Application even if they may also be within Fortenova Group's possession. (*See id.*) And Petitioner explains that

documents shared with the EU Council are "not as a practical matter accessible to SBK in the EU Action as the procedural rules governing annulment proceedings before the E.U. General Court do not allow for broad-based discovery from the E.U. Council." (*Id.* at 8 (citing Third Lansky Decl. ¶¶ 7-9).)

Petitioner agrees, as it must, that privileged documents may not be obtained pursuant to Section 1782. *See* 28 U.S.C. § 1782(a) ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."); *In re Okean B.V. & Logistic Sol. Int'l*, 60 F. Supp. 3d 419, 428 (S.D.N.Y. 2014) (holding that production of the requested materials "would not only be burdensome" but "would offend core tenets of our legal system (and those of Russia and Ukraine), which each respect a client's privileged communications with counsel" and explaining that under Section 1782, "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege"). Petitioner states that it does not seek privileged materials but rather documents that are not privileged because they relate to lobbying efforts or were shared with or received from third parties. (*See* ECF 33, Petitioner's Reply at 5.)

As to the documents sought that Petitioner contends are not privileged, Petitioner seems to interpret Respondents' argument that such materials are irrelevant to the Malta Action and the EU Action as going to the issue whether the requested discovery would be admissible in those actions. Petitioner responds that "the discoverability and admissibility" of requested discovery "in the foreign jurisdiction plays no role in a court's analysis of a Section 1782 petition." (*Id.* at 4.)

17

ii.    Analysis

Petitioner is correct that, "as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). However, Respondents do not appear to be arguing that the evidence sought by the Application would be inadmissible. They appear to be making a different point when they argue that the discovery sought is not "for use" in the Malta Action and the EU Action. Respondents cite to a case from the District of New Hampshire to support their position that a court should not grant a Section 1782 petition when the discovery sought is not relevant to the foreign proceedings. (*See* ECF 22, Respondents' Opp. at 13 n.6 (citing *In re Pilatus Bank PLC*, No. 20-MC-94 (JD), 2021 WL 1890752, at *9 (D.N.H. May 11, 2021).)

This general proposition is non-controversial: even though courts should not delve into whether Section 1782 materials would be admissible in a foreign proceeding, Rule 26(b) of the Federal Rules of Civil Procedure, which requires that information sought through discovery be relevant to a claim or defense, necessitates some inquiry into whether the discovery sought is relevant to the issues in the foreign proceeding. *See Certain Funds, Accounts &/or Inv. Vehicles*, 798 F.3d at 120 n.7 (noting the possible need for a threshold relevance determination "insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding"); *In re Refineria de Cartagena S.A.S.*, No. 23-MC-0455 (JPC), 2024 WL 95056, at *7 (S.D.N.Y Jan. 8, 2024) (explaining that in a Section 1782 application the "burden imposed on the applicant" to establish the relevance of the material

18

sought "is de minimis").

However, I do not believe that the relevance inquiry demanded by Respondents leads to their preferred outcome of a determination that the discovery sought is not relevant to and therefore not "for use" in the Malta Action or the EU Action. Petitioner has articulated why the requested discovery is relevant to the Malta Action: the materials may provide evidence of a "scheme that culminated in the sham transaction" that stripped Petitioner of its ownership interests in Fortenova Group. (ECF 13 Ex. 1, Petitioner's Mem. at 18; ECF 5, Refalo Decl. ¶ 5 (stating that the discovery sought is relevant to, among other issues in the Malta Action, why STAK viewed Petitioner as continuing to be controlled by Sberbank after Petitioner was acquired by Mr. Alketbi).) Petitioner has likewise provided an explanation of the relevance of the discovery it seeks for the EU Action: the materials may show that Akin engaged in lobbying on behalf of Fortenova Group to convince the EU Council unfairly to declare Petitioner a sanctioned entity. (*See* ECF 33, Petitioner's Reply Ex. 1, Second Lansky Decl. ¶ 20 (stating that "the circumstances surrounding the issuance of the Akin Opinion and its further use in the context of SBK ART's designation in the EU are of extreme relevance for the EU Action").)

Respondents' counterargument – that Fortenova Group and the EU Council "could not have been influenced in any way by documents that" they never saw (ECF 22, Respondents' Opp. at 13)[7] – does not persuade me that the requested documents are irrelevant to the Foreign Proceedings. Respondents' argument that documents that Fortenova Group never saw

---

[7]      As Petitioner has clarified, it is also seeking non-privileged communications between Fortenova Group and Akin; the argument that Fortenova Group could not have been influenced by documents it did not see would clearly not apply to such documents.

are necessarily irrelevant to the Malta Action (or that the EU Council never saw are necessarily irrelevant to the EU Action) proves too much. *Intel*'s requirement that the entity from which discovery pursuant to Section 1782 is sought not be a participant in the predicate foreign proceedings means that many applications pursuant to the statute seek discovery that has not been seen by the adverse party in such proceedings. Respondents cite no case suggesting that such discovery is necessarily irrelevant to the foreign proceedings, and my own research has turned up no case supporting Respondents' position.

Here, Petitioner seeks documents from Akin's files to test its theory that the Akin Opinion was not well-founded, leading the EU Council to incorrectly conclude that Petitioner should be sanctioned, which would be relevant in both the EU Action and the Malta Action, even if the EU Council and Fortenova never saw any such documents. It is somewhat harder, but not impossible, to envision non-privileged documents never seen by Fortenova Group that could provide evidence of a scheme that culminated in the Corporate Changes. Under the circumstances, I conclude that Petitioner has demonstrated that certain of the discovery it seeks meets the test of being relevant and therefore "for use" in the EU Action and the Malta Action.

Separately, it is not clear to me that one of Respondents' predicates – that documents produced to the EU Council, a government body and not an Akin client, would be exempt from production on the theory that such documents could be obtained by Petitioner from the EU Council in the EU Proceeding – is sound. While the parties submitted expert opinions taking somewhat different positions on whether, as a practical matter, taking discovery of the EU Council would be possible, the parties seem to agree that there would be significant barriers to

20

obtaining any such discovery. (*See* ECF 37, Petitioner's Response at 8; ECF 38, Respondents'

Response at 16-19.) And there is no requirement that a Section 1782 petitioner seek discovery

in the foreign proceeding before bringing a 1782 petition. *See In re Catalyst Managerial Servs.*,

680 F. App'x at 41. "Courts may grant § 1782 applications even where the applicant did not first

seek discovery in the foreign tribunal . . . , or where the information sought was not

discoverable under the laws of the foreign country at issue in the foreign proceeding." *In re BNP*

*Paribas Jersey Tr. Corp. Ltd.*, No. 18-MC-0047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14,

2018) (internal quotation marks and citation omitted).

Respondents state that although they cannot be sure without doing a complete

document collection, it is their "current understanding that no Akin timekeepers have

communicated with the EU Council in relation to Akin's work for Fortenova." (*See* ECF 38,

Respondents' Response at 11; ECF 41, Second Pees Decl. ¶¶ 14-16.) However, Respondents

have made no definitive representation that they never communicated with the EU Council in

relation to Akin's work for Fortenova. Even if it turns out that there are no such documents,

that is not a reason excuse Respondents from performing a reasonable search to confirm their

current understanding.

For all these reasons, I conclude that Petitioner has satisfied the "for use" requirement.

3.  The Application Is Brought by an Interested Party

The Application is brought by Petitioner, which currently is an interested party in the

pending Foreign Proceedings; it is a plaintiff in the Malta Action and an applicant in the EU

Action. (*See* ECF 5, Refalo Decl. ¶ 3; ECF 13 Ex. 3, Lansky Decl. ¶ 8.) Respondents do not contest

that Petitioner meets this requirement.

\*\*\*

Having been persuaded that the Application meets the statutory requirements of Section 1782, I turn to the discretionary factors set forth in *Intel*.

B.       The Discretionary Factors Favor Granting the Application

Petitioner argues that each of the four *Intel* Factors weighs in favor of granting the discovery requested by the proposed subpoena: (1) Akin is not a party to the Foreign Proceedings; (2) there is no indication that courts overseeing the Foreign Proceeding would reject the requested discovery; (3) the Application does not reflect an effort to circumvent foreign restrictions on discovery; and (4) the Application is "narrowly tailored to include only relevant and readily identifiable information and documents and avoid any undue burden on Akin." (ECF 13, Petitioner's Mem. at 21-24.)

Respondents take the position that three of the *Intel* Factors cut against granting the Application: whether "the person from whom discovery is sought is a participant in the foreign proceeding"; "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and whether the request is "unduly intrusive or burdensome." (ECF 22, Respondents' Opp. at 14.) Indeed, Respondents assert that those three factors are "particularly favorable to Akin in light of the Second Circuit's decision in *Kiobel v. Cravath Swaine and Moore LLP*, which strongly cautions against allowing petitioners to use Section 1782 to obtain discovery from law firms in the US in connection with their representation of foreign clients – precisely what SBK seeks to do here." (*Id.* at 9-10 (citing *Kiobel*, 895 F.3d 238, 246 (2d Cir. 2018)).)

For the reasons set forth below, I agree with Petitioner that the discretionary *Intel* Factors, on balance, favor granting the Application.

1. The First *Intel* Factor: Whether the Entity from Which Discovery Is Sought Is a Participant in the Foreign Proceeding

The first *Intel* Factor examines whether "the person [or entity] from whom discovery is sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as apparent." *Mangouras*, 980 F.3d at 97 (internal quotation marks and citation omitted).

a. *The Parties' Arguments*

Petitioner asserts that Akin is not a party to the Malta Action or the EU Action. (*See* ECF 5, Refalo Decl. ¶¶ 1, 3 & Ex. 1 (Complaint in Malta Action); ECF 13 Ex. 3 Lansky Decl. ¶¶ 8-10.)

Respondents counter that while it is technically the case that Akin is not a party to the Malta Action or the EU Action, the first *Intel* Factor weighs against discovery when "'for all intents and purposes petitioners are seeking discovery from . . . their opponent in the [foreign] litigation.'" (ECF 22, Respondents' Opp. at 15 (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)).) Respondents take the position that the Application "seeks documents that are possessed by Akin exclusively by virtue of its representation of Fortenova," which has possession, custody, and control "of the entire universe of responsive documents," including non-privileged documents that were not originally shared with Fortenova Group. (ECF 22, Respondents' Opp. at 15.) Respondents argue that granting the requested discovery would be particularly problematic here, since Petitioner "seeks discovery from Akin's US office when all Akin's work was performed by or at the direction of its London-based lawyers." (*Id.* at 17.)

23

Respondents point out that granting a Section 1782 petition if the documents are undiscoverable from the client abroad disturbs the attorney-client relationship. (*See id.* at 18 (citing *Kiobel*, 895 F.3d at 246).)

Petitioner responds that it does not seek Fortenova Group "corporate documents that have been entrusted to a lawyer in connection with legal representation," but instead "the records of an independent due diligence and analysis generated by the firm"; and that Fortenova's control over Akin's documents "exists only insofar as they may be privileged." (ECF 33, Petitioner's Reply at 9-10.)[8] However, Petitioner later clarified that in making that statement, Petitioner meant only that "Fortenova could have a veto power over production only to the extent that the documents might be privileged" and that Petitioner "did not purport to make a general pronouncement as to whether under Dutch or Maltese law Fortenova is deemed as a legal matter to have constructive possession over documents not physically in its possession but held extraterritorially in the hands of a law firm." (ECF 37, Petitioner's Response

---

[8]     Petitioner also argues that the case primarily relied on by Respondents, *Kiobel*, is distinguishable because the law firm target of discovery possessed the materials in question because its client had produced them in an earlier litigation subject to a confidentiality agreement limiting their use to that litigation. (*See id.*) As Petitioner correctly notes, the Second Circuit held that ordering the firm to re-produce the documents for a different proceeding without participation from the client would have modified the confidentiality order in the prior action – an "extraordinary, and possibly unique" feature of the case that, according to Petitioner, "led the Circuit to bar Section 1782 discovery." (*Id.* (quoting *Kiobel,* 895 F.3d at 246-47).) Petitioner overstates the significance of the confidentiality order to the Second Circuit's decision, which rested on "the *Intel* Factors, the respect owed to confidentiality orders, and the concerns for lawyer-client relations," without any of those factors being elevated over the others. *Kiobel,* 895 F.3d at 248. In so doing, Petitioner neglects to fully address the other considerations animating the decision in *Kiobel,* particularly the first *Intel* Factor. That the documents at issue in the Application are not subject to a confidentiality agreement is not dispositive.

at 6-7.) At oral argument, Petitioner suggested that the requested discovery could be granted solely in connection with the EU Action, which would moot Respondents' argument that Petitioner is effectively seeking discovery of a party (because unlike Fortenova Group, the EU Council is not Akin's client). However, when I pointed out that the scope of appropriate discovery could be quite different under that new theory (for example, it is unlikely that discovery on the Corporate Changes would be particularly relevant in the EU Action), Petitioner did not press the issue.

### b.  Analysis

Respondents are correct that courts are generally reluctant to find that the first *Intel* Factor supports requiring a law firm to provide discovery pursuant to Section 1782 when the firm's client or former client is the adverse party in the relevant foreign proceeding. *See, e.g., Kiobel,* 895 F.3d at 245 (citing *Schmitz,* 376 F.3d at 85); *In re Hulley Enters., Ltd.*, 358 F. Supp. 3d 331, 346-47 (S.D.N.Y. Feb. 19, 2019), *report and recommendation adopted,* 400 F. Supp. 3d 62 (S.D.N.Y. Sept. 5, 2019).

Allowing discovery from a U.S. respondent that is the agent of the petitioner's foreign adversary when the documents sought are within the possession or control of the petitioner's foreign adversary could "invite foreign parties to end-run directly seeking discovery from their adversaries in the foreign proceeding by serving § 1782 subpoenas on the adversaries' U.S.-based agents." *In re Klein*, No. 23-MC-0211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21, 2023). However, there have been circumstances where courts in this District have found that the first *Intel* Factor supported requiring production by a U.S. law firm even though its client or former client was the adverse party in the underlying foreign proceeding or that ordering the

25

law firm to provide the requested discovery was appropriate notwithstanding the first *Intel*

Factor. *See, e.g., In re Degens*, No. 20-MC-0237 (JGK) (RWL), 2020 WL 4252725, at *4-6 (S.D.N.Y.

July 24, 2020) (granting a petitioner's request for discovery in connection with a foreign divorce

proceeding from a law firm that represented the petitioner's ex-husband and his businesses

because "granting the request would help the [foreign] court," the "requests were not unduly

intrusive or burdensome," and any privilege issues could be addressed in "privilege logs"); *In re*

*Lane*, No. 22-MC-0034 (LGS), 2022 WL 16737132, at *3-5 (S.D.N.Y. Nov. 7, 2022) (granting a

petition seeking discovery from law firm that represented a party to the foreign litigation where

the final three *Intel* Factors supported production); *Pearson v. Trinklein*, No. 21-MC-0770 (ALC)

(JLC), 2022 WL 1315611, at *4-5 (S.D.N.Y. May 3, 2022) (granting a petition seeking discovery

from a law firm that had represented a decedent and some of his heirs for use in a foreign

dispute over the estate, even though some of the heirs were parties, when the law firm did not

argue that the first *Intel* Factor cut against ordering the requested discovery); *In re Alghanim*,

No. 17-MC-0406 (PKC), 2018 WL 2356660, at *4 (S.D.N.Y. May 9, 2018) (granting a petitioner's

discovery request of a law firm that represented a party in the foreign proceeding because that

party could not be located); *cf. In re Okean*, 60 F. Supp. 3d at 422 (noting that the Court had

previously held that Okean had satisfied the first three discretionary *Intel* Factors even though

the petition sought discovery of a law firm that had previously represented several parties to

the underlying foreign proceeding and that the Court had therefore required the law firm to

search for and produce a sampling of documents before concluding that ordering a full

production would be unduly burdensome).

26

I believe that a significant question in analyzing the first *Intel* Factor in this matter is whether the discovery requests directed at Akin "are in substance a backdoor means of obtaining the documents of the adverse party in the foreign proceeding" – or, put another way, what entity is the "'real party from whom documents are sought.'" *In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, No. 23-MC-0208 (JGLC) (GS), 2024 WL 555780, at *10 (S.D.N.Y. Jan. 18, 2024) (quoting *Kiobel*, 895 F.3d at 245).

"[D]ocuments in the possession of a party's attorney are deemed to be within the party's possession, custody, or control." *In re Alghanim*, No. 21-MC-0167 (LTS), 2022 WL 1423088, at *3. Law firm clients generally have the ability to obtain documents from their lawyers on demand. *See, e.g., In re Mare Shipping Inc.*, No. 13-MC-0228 (PKC), 2013 WL 5761104, at *4 (S.D.N.Y. Oct. 23, 2013) (citing cases), *aff'd sub nom*. *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 Fed. App'x 6 (2d Cir. 2014). In one case seeking Section 1782 discovery from the U.S. lawyer for a party to the foreign litigation for which the discovery was sought, the Second Circuit explained that, "[a]lthough technically the respondent in the district court was [the law firm], for all intents and purposes petitioners are seeking discovery from [the client], their opponent in the [foreign] litigation." *Schmitz*, 376 F.3d at 85. The Second Circuit went on to say that "*Intel* suggests that because [the client] is a participant in the [foreign] litigation subject to [foreign] court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Id.* (quoting *Intel*, 542 U.S. at 264). Similarly, in *Kiobel*, the Second Circuit reversed the district court's grant of a Section 1782 petition for discovery from a U.S. law firm where the petition

27

effectively sought discovery from the firm's client, which was "subject to jurisdiction in the foreign tribunal." *Kiobel*, 895 F.3d at 245.

Petitioner argues that, unlike the petitioners in *Schmitz* and *Kiobel,* it is not seeking Fortenova Group documents that happen to be in Akin's possession because of Akin's representation of its client, but instead is seeking Akin's own documents, created and obtained in connection with the Akin Opinion and Akin's lobbying efforts on behalf of Fortenova Group. (*See* ECF 33, Petitioner's Reply at 13.) And there is some support in the case law for distinguishing between the subpoenaed party's "own business records" and records of the party before the foreign court proceeding. *In re BM Brazil*, 2024 WL 555780, at *10. But the focus of this distinction is whether and if so to what extent the subpoenaed entity's records are discoverable in the foreign tribunal. *See id.* (granting discovery from "a legitimate third-party witness outside the jurisdictional reach of the [foreign court] who has potentially relevant evidence of its own, to which [the party to the foreign litigation] has no access" and finding that, "even if the Subpoenas embrace a smattering of communications" in possession of the party to the foreign litigation, "that is no reason to condemn [the petitioner's] entire request as improper"); *see also In re Batbold*, No. 21-MC-0218 (RA) (OTW), 2023 WL 2088524, at *5 (S.D.N.Y. Feb. 17, 2023) (ruling that the first *Intel* Factor supported the petitioner because "at least some of the discovery" that had been requested was "not obtainable in the foreign proceeding[ ]"); *In re OOO Promnefstroy*, No. 19-MC-0099 (RJS), 2009 WL 3335608, at *4-7 (S.D.N.Y. Oct 15, 2009) (ruling that, since the "vast majority" of the requested discovery was "also in the possession of parties to the foreign proceeding" and therefore within the jurisdictional reach of the foreign tribunal, the first *Intel* Factor cut against the petitioner).

Indeed, the Second Circuit has held that courts considering Section 1782 petitions may, in assessing the first *Intel* Factor, consider whether a foreign court could order the parties before it to produce documents. *See, e.g., Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (finding that consideration of whether documents were available in the foreign proceedings was appropriate and did not impermissibly impose an exhaustion requirement); *Effecten-Spiegel AG v. Lynch*, 771 F. App'x 38, 39 (2d Cir. 2019) ("With respect to the first and second *Intel* Factors, the District Court was entitled to consider the possibility that much of the requested discovery could be obtained from . . . a party to the [foreign] litigation.").

Thus, I assessed whether Fortenova Group could demand that Akin give them the documents sought by the proposed subpoenas, or any of them. When I asked Petitioner to provide information on this issue (ECF 35, Order), Petitioner resisted the question by arguing that "[t]he Second Circuit . . . has cast serious doubt on an interpretation of the first *Intel* Factor that would bring within its scope considerations of jurisdictional control over *documents* in addition to control over *parties.*" (ECF 37, Petitioner's Response at 3 (citing cases).) Petitioner does state that Fortenova Group could have veto power over Akin's production only to the extent the documents are privileged (*see* ECF 37, Petitioner's Response at 6-7), but that is a slightly different matter.

The caselaw in this jurisdiction supports the proposition that a client generally may obtain documents from its lawyer on demand. *See, e.g., Kiobel,* 895 F.3d at 245 (citing *Schmitz,* 376 F.3d at 85); *In re Hulley Enters.*, 358 F. Supp. at 346-47. Because it seems likely that many of the documents sought by the proposed subpoenas could be demanded by Fortenova Group from Respondent, the first *Intel* Factor would cut against granting the Application. However,

Petitioner is correct that that this conclusion "does not automatically foreclose § 1782 aid." (ECF 37, Petitioner's Response at 7 (quoting *Gorsoan Ltd. v. Bullock,* 652 Fed. App'x 7, 9 (2d Cir. 2016)).)

> 2.  The Second *Intel* Factor:
>     Receptivity of the Foreign Forum to Judicial Assistance

The second *Intel* Factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Mangouras*, 980 F.3d at 97-98 (internal quotation marks and citation omitted). "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance[,]" and a court "should deny discovery on the basis of lack of receptiveness only where it is provided with 'authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782.'" *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting *Euromepa*, 51 F.3d at 1100-02); *see also In re Safra*, No 21-MC-0640 (GHW) (JLC), 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government"); *Schmitz,* 376 F.3d at 84 (denying the discovery request where the German Ministry of Justice and local German prosecutor asked the district court to do so).

Petitioner argues that this factor cuts in its favor because Maltese counsel states that the use of Section 1782 to obtain discovery is not prohibited or discouraged in Malta. (*See* ECF

5, Refalo Decl. ¶¶ 6-7.) Even Respondents concede that this factor is neutral in this matter. (*See*

ECF 22, Respondents' Opp. at 14.) I conclude that this factor supports granting the Application.

    3. The Third *Intel* Factor: Circumvention of Foreign Proof-Gathering Restrictions

  The third *Intel* Factor asks "whether the . . . request conceals an attempt to circumvent

foreign proof-gathering restrictions or other policies of a foreign country or the United

States," *Mangouras*, 980 F.3d at 98, which occurs if the application is an attempt to evade

discovery procedures in the foreign jurisdiction, or if the application is otherwise a "bad faith

endeavor to misuse Section 1782." *In re Bouka*, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022); *see also*

*In re Hansainvestment Hanseatische Inv.-GmbH,* 364 F. Supp. 3d 243, 251 (S.D.N.Y.

2018) (holding that the third *Intel* Factor weighed in the applicant's favor because "the Court is

not persuaded that Applicants have engaged in any improper or bad faith evasion of German

procedures").

    *a. The Parties' Arguments*

  Petitioner claims there is no indication that it is trying to avoid foreign restrictions on

gathering evidence. (*See* ECF 13, Petitioner's Mem. at 22-23.) Maltese counsel explains that "as

long as discovery is lawfully obtained in the relevant jurisdiction, Maltese courts are amenable

to receiving the results of that discovery in evidence in Maltese proceedings." (ECF 5, Refalo

Decl. ¶ 6.) Foreign counsel similarly states that the EU tribunal is open to discovery lawfully

obtained in a foreign jurisdiction. (*See* ECF 13 Ex. 3, Lansky Decl. ¶ 16.)

  Respondents argue that Petitioner has already sought and been denied the requested

discovery in foreign fora and that Petitioner would be unable to obtain any of the materials it

requests in the foreign proceedings due to proof-gathering restrictions – prohibitions (1)

against discovery being taken by a sanctioned entity, particularly for use in a proceeding, such as the Malta Action, to seek financial benefits, (2) preventing a party from obtaining discovery from the adverse party's legal counsel, and (3) preventing disclosure due to foreign privilege and confidentiality concerns. (*See* ECF 22, Respondents' Opp. at 18-19.) Respondents contend that Petitioner is not an entity seeking discovery that cannot be obtained in foreign fora but instead is seeking discovery it is prohibited from receiving in the foreign fora, which Respondents maintain amounts to an attempt to circumvent foreign proof-gathering restrictions. (*See id.* at 20-21.)

Petitioner denies that the courts in Malta Action and the EU Action rebuffed its efforts to obtain the discovery it now seeks here, saying that it never sought discovery in those fora. (*See* ECF 33, Petitioner's Reply at 11; ECF 5, Refalo Decl. ¶ 1; ECF 33-2, Second Lansky Decl. ¶¶ 11-14.) And it dismisses Respondents' other arguments with the assertion that this Court "is not tasked with exploring the nuances of admissibility in the foreign court venue" or engaging in "'speculative forays into legal territories unfamiliar to federal judges.'" (*See* ECF 33, Petitioner's Reply at 12 (quoting *Euromepa*, 51 F.3d at 1099).) Petitioner insists that, "In the absence of any evidence that [it] is seeking to game the system or circumvent conclusive rulings against it, this factor does not support Akin's defense." (*Id.*)

Respondents counter that there are EU laws that could prohibit discovery of documents provided to the EU Council and that Petitioner's efforts to require Respondents to produce such documents falls afoul of foreign proof-gathering restrictions. (*See* ECF 38, Respondents' Response at 16.) Respondents also rely on the declarations of Ross Denton, Christiaan R. Zijderveld, and Daniel Buttigieg to support their position that they would risk facing foreign law

32

exposure if they were required to produce documents to a sanctioned entity. (*See* ECF 22, Respondents' Opp. at 18 (citing ECF 24, Denton Decl. ¶¶ 29-32, ECF 25, Buttigieg Decl. ¶¶ 23-25, and ECF 26, Zijderveld Decl. ¶¶ 39-40)).)

On the question whether Respondents would risk violating foreign law by producing documents to a sanctioned entity, one of Petitioner's foreign law experts dismisses as "completely unfounded" Respondents' argument that they face potential liability for EU and U.K. sanctions violations if they produce documents to Petitioner. (ECF 33, Petitioner's Reply at 14; ECF 33-3, Al-Karim Decl. ¶ 42.)

Respondents counter that "the declarations of its experts correctly describe the operative foreign sanctions rules and how they operate to prohibit SBK from obtaining the discovery sought by its Petition," but say that if the Court believes the issue to be unclear, that lack of clarity cuts against granting the application. (*Id.* at 13-14 (citing *In re Hulley Enters.,* 358 F. Supp. 3d at 352-53 for the proposition that the "lack of clarity [on an issue of foreign law] favors denying the section 1782 application" because granting the application might "require an American law firm with an office in a foreign country to potentially be directed to act in contravention of that foreign country's law").)

Petitioner responds:

Akin submits a throw-away line cautioning the Court that it is unclear whether sanctions prevent any party in Europe from providing a sanctioned entity with information in connection with a dispute. However, the foreign law experts for both parties before this Court agree that SBK ART retains the fundamental ability to participate in the legal process, including, but not limited to, the collection of evidence. Indeed, the EU Council itself provided disclosure to SBK ART when it turned over a copy of the Akin Opinion. As set forth in the first Lansky declaration and the Al Karim declaration, sanctioned entities have all the same rights as any litigant in any litigation, except that a court may not make funds or

> economic resources available to the sanctioned entity, including at the
> conclusion of the case, once the parties' respective rights have been fully
> determined. In line with this, in none of the multiple Dutch summary
> proceedings between Petitioner and Fortenova has a court ever ruled that
> Petitioner is not entitled to information due to it being a sanctioned entity.

(ECF 42, Petitioner's Supp. Response at 2.)

> b.   Analysis

As noted above, "Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . , or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." *In re BNP Paribas*, 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) (internal quotation marks and citation omitted). Section 1782 does not have a "foreign-discoverability rule" that would "categorically bar a district court from ordering production of documents where the foreign tribunal or 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." *Fund for Protection of Investor Rights in Foreign States*, 5 F.4th 216, 231 (2d Cir. 2021) (footnote omitted), *reversed on other grounds sub nom. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022).

Indeed, the Second Circuit has held that, "[a]bsent authoritative proof that a foreign tribunal would reject the evidence, we have explained that a court should generally allow discovery if doing so would further § 1782's goals" of "provid[ing] efficient means of assistance to participants in international litigation in our federal courts" and "encourag[ing] foreign countries by example to provide similar means of assistance to our courts." *Fund for Protection of Investor Rights in Foreign States*, 5 F.4th at 230. "[T]o demonstrate circumvention, [a respondent] must illustrate . . . that [the applicant is] engaged in a bad faith endeavor to misuse

Section 1782.'" *Refineria de Cartagena,* 2024 WL 95056, at *10 (quoting *In re Hansainvest Hanseatische*, 364 F. Supp. 3d at 251); *see also In re Batbold*, 2021 WL 4596536, at *4 (stating that bad faith is the measure for whether discovery would circumvent foreign proof-gathering restrictions).

Respondents have provided no authoritative proof that the courts in the Malta Action and the EU Action would reject evidence obtained through this proceeding or that Petitioner is acting in bad faith to try to misuse Section 1782.

Respondents make a fair point when they say that Petitioner's "blanket disclaimers" that Petitioner is not seeking privileged information fail to address whether Petitioner would be prohibited from discovering that information in the relevant foreign fora in light of foreign privilege and confidentiality law (*see* ECF 22, Respondents' Opp. at 19). But the question whether producing any of the specific documents called for by the proposed subpoenas would violate relevant foreign privilege or confidentiality law is not one that needs to be resolved now. The Second Circuit has directed courts considering Section 1782 petitions to address concerns about granting the requested discovery by issuing narrow discovery orders rather than denying the relief outright. *See Mees*, 793 F.3d at 302; *Fund for Protection of Investor Rights in Foreign States*, 5 F.4th at 231 (noting that it is preferable for courts to address issues with the scope of discovery "as they arise rather than to impose a categorical bar in the first instance"). If Respondents believe that any of the discovery sought is protected from production by foreign privilege or confidentiality law, that issue can be addressed in connection with a meet-and-confer process after the proposed subpoenas are issued, and, if necessary, through a later request for Court intervention.

35

And I am not persuaded that providing discovery to Petitioner puts Respondents at risk of violating foreign sanctions law. Respondents' experts speak in tentative terms about the possibility of sanctions violations because of laws against providing sanctioned entities with "funds and economic resources" (*see* ECF 24, Denton Decl. ¶¶ 29-32; ECF 25, Buttigieg Decl. ¶¶ 23-25; ECF 26, Zijderveld Decl. ¶¶ 39-40), while Petitioner' expert definitively takes the position, which makes more sense, that sanctioned entities are entitled to seek and receive discovery to defend themselves. (*See* ECF 33-3, Al-Karim Decl. ¶ 42 (citing *Mints v. PJSC Bank* [2023] EWCA Civ 1132 (English Court of Appeal decision holding that prohibition on providing "funds and economic resources" does not relate to the exercise of normal judicial functions including discovery)).) Even Respondents do not appear to be saying that there is no way for them to produce the requested materials without a risk of sanctions – they seem to say that sanctions can be avoided if U.S. lawyers do the review and production but claim it is burdensome to ask U.S. lawyers to work on the production when the underlying engagement originated in Europe. (*See* ECF 22, Respondents' Opp. at 24-25.)

Based on the analysis above, I conclude that the third *Intel* Factor weighs in favor of granting Petitioner's Application.

4.   The Fourth *Intel* Factor: Whether the
     Discovery Request Is Unduly Intrusive or Burdensome

The fourth *Intel* Factor looks at "whether the request is 'unduly intrusive or burdensome,'" *Mangouras*, 980 F.3d at 98, which is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, 2017 WL 6343689, at *4 (citing *Mees,* 793 F.3d at 302). In this context, Rule 26 "contemplate[s] that discovery requests

36

be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Correios*, 2022 WL 4955312, at *8. The "proportionality analysis depends on the relevance of the information sought"; in the case of a Section 1782 petition, "relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs.,* 680 F. App'x at 39.

> *a. The Parties' Arguments*

Petitioner argues that the discovery sought would not be unduly burdensome for Akin to produce, as the requests "are tailored to a specific assignment, and a narrowly defined set of communications." (ECF 33, Petitioner's Reply at 14.)

Respondents opine that "SBK seeks to impose oppressive burdens on Akin to obtain documents that will have no relevance in any of the foreign proceedings." (ECF 22, Respondents' Opp. at 21.) Respondents point to four different reasons why the requested discovery sought is unduly burdensome: (1) requiring U.S. attorneys to produce documents obtained through representation of a foreign client chills communications between lawyers and their clients; (2) seeking discovery of materials originating from the foreign office of a U.S. law firm discourages clients from hiring the foreign office of American law firms; (3) "there will be a morass of privilege issues," and "the inevitable disputes over privilege and choice of law questions that will emerge on a document-by document basis guarantee that [responding to the proposed subpoena would] be hugely burdensome for Akin"; and (4) counsel face exposure from producing the requested documents due to Petitioner's status as a sanctioned entity. (*See id.* at 21-24.)

Petitioner responds that Respondents overstate the burdens associated with the discovery requests. Petitioner points out that there is no general prohibition on discovery in the U.S. from law firms with foreign offices and that Akin has made decisions about its structure "with full awareness of the implications for its discovery obligations in the United States." (ECF 33, Petitioner's Reply at 13-14.) Petitioner accuses Akin of "protest[ing] too much" about the burdens of addressing choice of law and privilege issues in connection with producing documents in this matter, saying that "[t]his is the normal stuff of litigation and document discovery, and fully within the power of Akin, as a global firm, to accomplish efficiently and cost-effectively." (*Id.* at 14.)

Finally, Petitioner argues that, having met the burden of demonstrating that the discovery sought is relevant, and due to the substantial financial stakes at issue, Petitioner has demonstrated that its need for the requested discovery outweighs any claimed burdens. (*See id.* at 15.)

### i.   Privilege Issues

In support of the claim that the privilege issues will be overwhelming, Respondents rely primarily on the declaration of Daniel Buttigieg for the position that documents relating to Akin's representation of Fortenova Group are privileged under Maltese and Dutch law. (*See* ECF 22, Respondents' Opp. at 19 (citing ECF 25, Buttigieg Decl. ¶¶ 7, 12-14 and ECF 26, Zijderveld Decl. ¶¶ 52-53, 60-67).) Respondents assert that "the requests seek categories of documents that are likely to be almost exclusively privileged under foreign law . . ., including Akin's own internal communications and documents, as well as those exchanged between Akin and (a) its

client, Fortenova; (b) co-counsel to Fortenova as to matters of Dutch law . . . ; and (c) multiple []

agents and advisors." (ECF 38, Respondents' Response at 13.)

Petitioner makes the following points on the issue of privilege:

The petition, at its core, seeks records relating to Akin's work done in connection
with coming to the conclusions in the Akin Opinion, and its efforts to advocate
on behalf of Fortenova (and regarding SBK ART) before OFAC and the EU Council.
This is lobbying and an investigation and, by definition, not privileged. And, to
the extent any instructions or communications with Fortenova in relation to the
Akin Opinion were privileged, Fortenova affirmatively waived the protection
when it produced the Akin Opinion in one of the Dutch proceedings against SBK
ART. Petitioner does not seek exhaustive records from all aspects of Akin's
relationship with Fortenova, as Akin protests. Moreover, privilege on a
document-by-document basis need not be considered at this stage. It is
sufficient that there is clearly some relevant and non-privileged material.

(ECF 42, Petitioner's Supp. Response at 1-2.)

ii. Foreign Sanctions Law

Respondents assert that the burdens of production due to the risk of sanctions

outweigh any potential relevance to the information being sought. (*See* ECF 22, Respondents'

Opp. at 24-25.)

As noted above, Petitioner's foreign law expert dismisses as "completely unfounded"

Respondents' argument that they face potential liability for EU and U.K. sanctions violations if

they produce documents to Petitioner. (ECF 33, Petitioner's Reply at 14; ECF 33-3, Al-Karim

Decl. ¶ 42.)

iii. Scope of the Proposed Subpoenas

On the question whether the proposed subpoenas would require Respondents to have

to review an unreasonably large volume of documents, Respondents make the following points:

1) 169 current and former Akin timekeepers have collectively billed nearly 30,000 hours to

39

Fortenova Group for legal services; 2) a search of just the billing partner's files from January 2019 to the present applying the terms "Fortenova" and "FNG" yielded over 90,000 documents; 3) of the documents in that sample set, 44% are uniquely possessed by Akin (communications and documents sent and received only within Akin) and 26% were shared with third parties other than Fortenova Group and the EU Council (including Fortenova's other legal counsel and advisors whose work was done at the direction of counsel); and 4) to identify non-privileged documents, Akin would have to review all documents and determine which (or which parts) are privileged. (*See* ECF 38, Respondents' Response at 2-4.)

Petitioner states: "Akin's quick math about the number of documents that would need to be reviewed based on the search term 'Fortenova' misses the point entirely. The search terms that would matter most are 'SBK,' 'Sberbank,' 'Alketbi' and 'sanction.'" (ECF 42, Petitioner's Supp. Response at 2.)

At oral argument, Respondents stated that running Petitioner's proposed search terms over the billing partner's files yielded similar results to their initial searches (over 70 thousand documents).

### b.  Analysis

Petitioner's response to two of the burdens raised by Respondents – that the proposed subpoenas would chill communications between lawyers and their clients and discourage clients from hiring the foreign office of American law firms – is essentially that this is a risk Respondents have assumed based on the nature of their multinational firm and the way they structured their operations. (*See* ECF 33, Petitioner's Reply at 13-14.) I do not find this position to adequately address the very real policy concerns raised by the Second Circuit and courts in

40

this District when considering Section 1782 petitions. *See, e.g., Kiobel*, 895 F.3d at 247 (noting that "[t]he Supreme Court has stressed the need for 'full and frank communication between attorneys and their clients,' which 'promote[s] broader public interests in the observance of law and administration of justice'"); *In re Sarrio, S.A.*, 119 F.3d 143, 146 (2d Cir. 1997) (explaining that the "policy of promoting open communications between lawyers and their clients . . . would be jeopardized if documents unreachable in a foreign country became discoverable"). However, those concerns would not apply to Akin in its role as a lobbyist rather than lawyer; nor would those concerns apply to the extent that Akin's legal counsel provided business or other non-legal advice. *See, e.g., In re Degens*, 2020 WL 4252725, at *4-6 (granting a petitioner's request for discovery from a law firm that represented the petitioner's adversary in the foreign proceeding where the law firm had performed non-legal work); *In re Lane*, 2022 WL 16737132, at *3-5 (granting a petition seeking discovery from law firm that represented a party to the foreign litigation in part because the firm had done some non-legal work for the party). Even with regard to Akin acting in its role as legal counsel, those concerns are not dispositive, and limited discovery of non-privileged materials may still be appropriate after balancing the needs of Petitioner and the burdens on Respondents.

As to Respondents' argument that production would place them at risk of violating foreign sanctions law, as I explained above, I am unpersuaded. *See supra* Section II(B)(3)(b).

Petitioner is also correct that it has shown that the requested discovery is relevant and that the litigation stakes are high (*see* ECF 33, Petitioner's Reply at 15), which means that any arguments by Respondents that complying with the proposed subpoenas would be time-consuming or expensive because of the "morass of privilege issues" and "inevitable disputes

41

over privilege and choice of law questions" are unlikely to carry the day. *See, e.g., In re BM Brazil*, 2024 WL 555780, at *17 (noting that the assertion that production would require a "labor-intensive search of thousands of documents some of which may have to be redacted" was not sufficient to demonstrate undue burden in a high-stakes commercial litigation); *In re Valitus, Ltd.*, No. 20-MC-91133 (FDS), 2020 WL 6395591, at *9 (D. Mass. Nov. 2, 2020) (holding that compliance with the subpoena would not be unduly burdensome for a respondent that "operate[d] a highly sophisticated worldwide enterprise").

Here, I directed Respondents to address "the specific nature of the burdens that Respondents would face if the Court were to permit issuance of subpoenas for discovery relating to non-privileged materials either (i) 'uniquely possessed by Akin' or (ii) shared only 'with third parties other than' Fortenova Group and the European Union Council." (ECF 35, Order.) Akin responded that for the set of documents from the files of the billing partner that contained certain search terms, 44% of the documents are uniquely possessed by Akin and 26% were shared with third parties other than Fortenova Group and the EU Council; and that the "vast majority of documents in the first category would be protected from disclosure, in whole or in part, by attorney-client privilege and/or the attorney work product doctrine, and the second category may be similarly protected depending on who the third party was with whom the materials were shared." (ECF 38, Respondents' Response at 2-4.) I do not believe that this qualified representation is sufficient to conclude that the burden on Respondents of providing relevant non-privileged discovery is disproportionate to the needs of the Foreign Proceedings, particularly if the required discovery is limited in accordance with my recommendations below.

To the extent production in this matter raises privilege issues, it is likely that they can be addressed through narrowing the scope of the proposed subpoena and relaxing the requirements for a privilege log – which are preferable to simply recommending that the Application be denied. *See Mees*, 793 F.3d at 302 (explaining that it is better for a court to issue "a closely tailored discovery order rather than . . . simply deny[ ] relief outright"). While I recognize that for a law firm to create a privilege log for its own document production would require substantial work, the burden would be reduced if the parties agreed that Respondents could use an appropriately simplified privilege log. *See* Local Civil Rule 26.2.

    c.   *Suggested Limitations on the Scope of the Proposed Subpoenas*

At oral argument, I stated that I was inclined to recommend granting some discovery and asked the parties if they wanted my thoughts on the reasonable scope of discovery before they met and conferred. They said that they wanted my guidance, without prejudice to making any appropriate objections to my report and recommendation and, on Respondents' part, to seeking reimbursement for costs of any required production.

I believe that Petitioner has shown that paper discovery on the following topics is likely to be relevant to the Malta Action and/or the EU Action: (1) Mr. Alketbi's acquisition of Petitioner; (2) the Akin Opinion; and (3) the Corporate Changes. (A deposition on those topics plus Respondents' document production would similarly be relevant.) My view is that the relevant period for document production should be from February 1, 2022 (shortly before Mr. Alketbi's acquisition of Petitioner) to December 31, 2023 (shortly after the sale of MidCo), which seems to be the period during which there are most likely to be responsive documents on those topics. Petitioner has not persuaded me that the other topics listed in the proposed

subpoenas (over the longer period) are likely to be particularly relevant to the Foreign

Proceedings, which involve whether Petitioner was improperly sanctioned by the EU and

whether Petitioner was improperly deprived of its voting rights and thereby harmed by the

Corporate Changes. I expect that Respondents would be able to identify the professionals who

worked on those three matters, meaning that it seems unlikely Respondents would have to

search all timekeepers who billed time to Fortenova Group matters.

Respondents' opposition to the Application suggests another possible limitation on the

scope of the proposed document subpoenas: production of non-privileged materials either

"uniquely possessed by Akin" or shared only "with third parties other than" Fortenova Group

and the EU Council. (*See* ECF 22, Respondents' Opp. at 12-13, 15-21.) As noted above, I do not

believe that documents shared by Respondents with the European Council (if any) are

protected from production. I therefore recommend granting the Application, with the proposed

subpoenas narrowed to cover the topics listed above over the shorter timeframe, and with

production limited to non-privileged materials that are uniquely possessed by Akin or that have

been shared with third parties other than Fortenova Group. To the extent that Respondents

believe that any such responsive documents are privileged, they should meet and confer with

Petitioner and place them on a privilege log; I encourage the parties to agree to a simplified

privilege log. *See* Local Civil Rule 26.2.

While Petitioner cites caselaw holding that Section 1782 discovery is not precluded even

when a party to the underlying foreign case possesses some of the documents (*see* ECF 37,

Petitioner's Response at 7-8), I believe that in this matter, it is appropriate to exclude from the

required discovery any documents that were shared with Fortenova Group; given the burdens

44

associated with the production due to the volume of documents held by Respondents, I conclude that this limitation on the required discovery is warranted due to the proportionality requirement.

I do not believe that at this stage I need to address the question whether documents shared with Fortenova Group's foreign legal counsel and advisors are, as a general matter, privileged under relevant foreign law. I encourage the parties to meet and confer on this topic as well as on an appropriately simplified privilege log. *See* Local Civil Rule 26.2. If necessary, the parties can come back to the Court with any discovery disputes they are unable to resolve after meeting and conferring.

Based on the analysis above, I conclude that the fourth *Intel* Factor supports granting the Application, with narrowed proposed subpoenas.

***

I conclude that the first *Intel* Factor cuts against granting the Application, while the final three *Intel* Factors favor granting the Application. In deciding whether the *Intel* Factors, on balance, support granting the Application, I am mindful that Second Circuit has said that "the Intel factors are not to be applied mechanically" and that courts "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel*, 895 F.3d at 245. In my view, this admonition means that I should not recommend denying the Application reflexively, merely because Akin is a law firm retained by a party to the foreign proceeding. Indeed, Courts in this District have required law firms to provide Section 1782 discovery even when the first *Intel* Factor favored the respondents if the other three *Intel* factors favored the

45

petitioners. *See, e.g., In re Degens*, 2020 WL 4252725, at *4-6; *In re Lane*, 2022 WL 16737132, at *3-5 (S.D.N.Y. Nov. 7, 2022).

In this matter, I think a "pertinent issue arising from the facts of the particular dispute" is that Akin drafted the Akin Opinion, which a Fortenova Group entity provided to a Dutch court to contest Petitioner's right to exercise its voting rights and possibly also to the EU Council in connection with the Council's consideration of whether to sanction Petitioner; the Akin Opinion stated that documents provided by Mr. Alketbi explaining the purchase were (1) "insufficient to confirm" that his acquisition demonstrates that Petitioner should "no longer be[ ] subject to the asset freeze restrictions imposed on its purported (former) parent company Sberbank" and (2) "indicative of criminal sanctions breaches having been committed by EU persons . . . ." (ECF 13 Ex. 1, Petitioner's Mem. at 7-8.) My view is that Fortenova Group's affirmative use of the Akin Opinion by sharing it with the Dutch court and possibly the EU Council moves Akin's work on the Akin Opinion out of the category of legal advice provided by legal counsel; under U.S. law, if it applies, it is possible that Fortenova Group's public use of the Akin Opinion effected a subject matter waiver of any privilege attaching to documents relating to the Akin Opinion (and by extension to documents concerning Mr. Alketbi's acquisition of Petitioner). *See, e.g., In re Leslie Fay Cos., Inc. Sec. Litig.*, 161 F.R.D. 274, 283, 284 (S.D.N.Y. 1995) (holding that the submission to the Securities and Exchange Commission of an accounting report prepared by the company's audit committee and outside counsel waived attorney-client privilege over the report and its underlying documents, to the extent that the underlying documents contained no legal analysis or advice beyond what was discussed in the report). Even if there were no such waiver, the public use of the Akin Opinion means that the work relating to the Akin Opinion and Mr.

46

Alketbi's acquisition of Petitioner becomes something more like the discoverable work of a lawyer acting as a lobbyist or business advisor.

One of the concerns raised by Respondents in connection with the first *Intel* Factor is that it is problematic to order production of "documents that are possessed by Akin exclusively by virtue of its representation of Fortenova," especially if the documents are undiscoverable from the client abroad, because requiring production would disturb the attorney-client relationship. (ECF 22, Respondents' Opp. at 15.) However, where, as with documents relating to the Akin Opinion and Mr. Alketbi's acquisition of Petitioner, the discovery does not seek materials protected on the basis of privilege or the work product doctrine, requiring production would not disturb the attorney-client relationship. Likewise, one of the burdens raised by Respondents in connection with the fourth *Intel* Factor – that the proposed subpoenas would chill communications promoting compliance with the law between lawyers and their clients – is not in my view applicable to Akin's work relating to the Akin Opinion or Mr. Alketbi's acquisition of Petitioner.

While it may be that most documents relating to the Corporate Changes will be privileged or reflect attorney work product, it seems plausible, given Akin's apparently active role in Fortenova Group's corporate maneuvers relating to Petitioner, that Respondents could have a meaningful number of non-privileged documents relating to the Corporate Changes as well. I believe that Respondents should be required to perform a reasonable search for such documents, for the same reasons described above in connection with my analysis of documents relating to the Akin Opinion and Mr. Alketbi's acquisition of Petitioner.

In making my recommendation, I am also guided by the Second Circuit's instruction that, "[i]n exercising its discretion, a district court should consider the 'twin aims' of § 1782: (1) providing efficient means of assistance to participants in international litigation and (2) encouraging foreign countries to provide such assistance to our courts." *Mees,* 793 F.3d at 297-98. I believe that authorizing limited discovery better serves those twin aims than denying all discovery requested in the proposed subpoenas.

For the foregoing reasons, I conclude that the discretionary factors support granting the Application, with narrowed proposed subpoenas. To the extent that, in the course of responding to the narrowed subpoenas, Respondents find that the burdens are undue, based on a high number of documents responsive to a particular request that need to be reviewed for privilege or a high proportion of documents that are protected from production based on privilege, Respondents may seek relief from the Court if necessary after meeting and conferring with Petitioner.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the Application be GRANTED and that Petitioner be authorized to serve on Respondents subpoenas that are modified as described herein.

DATED:    July 30, 2024
          New York, New York

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

48

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this report and recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).